**Tony Allen ROMAN NOSE, petitioner, Respondent,**

v.

**STATE of Minnesota, Appellant.**

**No. A13–0483.**

Supreme Court of Minnesota.

April 16, 2014.

---

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant State Public Defender, Saint Paul, MN, for respondent.

Lori Swanson, Attorney General, Saint Paul, MN; and Pete Orput, Washington County Attorney, Robin M. Wolpert, Assistant Washington County Attorney, Stillwater, MN, for appellant.

## OPINION

GILDEA, Chief Justice.

The question presented in this case is whether the postconviction court erred by resentencing respondent Tony Allen Roman Nose to life with the possibility of release after 30 years based on a legal conclusion that the rule announced in *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), applies retroactively to a juvenile whose sentence of life in prison without the possibility of release (LWOR) became final before the *Miller* rule was announced. Because the postconviction court's legal conclusion is in direct conflict with *Chambers v. State,* 831 N.W.2d 311 (Minn.2013), and the circumstances of this case do not warrant granting relief to Roman Nose under our supervisory powers to ensure the fair administration of justice, we reverse the postconviction court's January 28, 2012 order and reinstate the original sentence of LWOR.

On June 16, 2001, a Washington County jury found Roman Nose guilty of first-degree murder while committing or attempting to commit criminal sexual conduct in the first or second degree and first-degree premeditated murder for the murder of Jolene Studemann in July 2000. Roman Nose was 17 years and 10 months old when he committed the crime. After

the district court convicted Roman Nose under Minn.Stat. § 609.185(a)(2) (2012) (criminal-sexual-conduct murder), the court sentenced him to LWOR under the mandatory sentencing scheme in Minn. Stat. § 609.106, subd. 2(1) (2012). On direct appeal, Roman Nose did not challenge his sentence. Instead, he challenged his conviction, asserting that the district court and the prosecutor made several errors that entitled him to a new trial. We affirmed his conviction on August 21, 2003. *State v. Roman Nose*, 667 N.W.2d 386 (Minn.2003).[1]

Nearly 9 years later, on June 25, 2012, the United States Supreme Court held in *Miller v. Alabama* that sentencing a juvenile to LWOR without consideration of age and other relevant age related characteristics violated the Eighth Amendment's prohibition on cruel and unusual punishment. —— U.S. ——, 132 S.Ct. at 2475. Based on that holding, the Court struck down sentencing schemes in Alabama and Arkansas that imposed a mandatory sentence of LWOR on juveniles. *Id.* In a footnote, the *Miller* Court cited a number of similar sentencing schemes, including Minn.Stat. § 609.106, subd. 2—the statute under which Roman Nose was sentenced. *Miller*, —— U.S. ——, 132 S.Ct. at 2473 n. 13. The *Miller* Court did not, however, categorically prohibit LWOR sentences for juveniles; rather, the Court required that before imposing such sentences, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for

juveniles." *Id.* at ——, 132 S.Ct. at 2475. Among the factors to be considered are the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at ——, 132 S.Ct. at 2468.

Three months after the United States Supreme Court decided *Miller*, Roman Nose filed a petition for postconviction relief in Washington County, arguing that the sentence imposed on him violated the Eighth Amendment. Petitions for postconviction relief generally must be filed within 2 years of the appellate court's disposition of the petitioner's direct appeal. Minn.Stat. § 590.01, subd. 4(a) (2012). But defendants whose convictions became final before August 1, 2005, such as Roman Nose, had "two years after the effective date of [the] act to file a petition for postconviction relief." *See* Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1098. Because Roman Nose's petition was filed over 7 years after the effective date of the act, it was untimely under Minn. Stat. § 590.01, subd. 4(a). Roman Nose argued, however, that his petition was not time barred by Minn.Stat. § 590.01, subd. 4(a), because it fell under the exception for those who assert a new interpretation of federal law by the United States Supreme Court that retroactively applies to the petitioner's case, *see* Minn.Stat. § 590.01, subd. 4(b)(3) (2012).[2]

The postconviction court concluded that Roman Nose's petition was not time barred because *Miller* announced a new

1. After Roman Nose appealed, we stayed his appeal and remanded to the district court for findings on whether the method used to test DNA samples in the case had gained general acceptance within the relevant scientific community. *Roman Nose*, 667 N.W.2d at 392. We reinstated the appeal after the district court ruled that the method had gained general acceptance. *Id.* That issue is not relevant here.

2. Because Roman Nose invoked the subdivision 4(b)(3) exception within 2 years of the *Miller* decision, he did not run afoul of Minn. Stat. § 590.01, subd. 4(c) (2012) (providing that any petition invoking an exception to the postconviction limitations period must be filed within 2 years of the date the claim arises).

interpretation of federal constitutional law by the United States Supreme Court that applied retroactively to Roman Nose.[3] Based on that conclusion, the postconviction court granted Roman Nose's petition for postconviction relief and resentenced him to life in prison with the possibility of release after 30 years.

The State appealed to our court on March 18, 2013. At that time, we had heard arguments in *Chambers* but had not yet issued a decision. *Chambers* raised many of the same questions raised here, most notably, whether *Miller* applied retroactively to a juvenile whose LWOR sentence became final before *Miller* was decided. 831 N.W.2d at 321–31. We stayed this appeal pending final disposition in *Chambers*.

We issued our decision in *Chambers* on May 31, 2013. In *Chambers*, we held that the *Miller* rule does not apply retroactively to a juvenile whose sentence of LWOR, under Minn.Stat. § 609.106, subd. 2(1), became final before the *Miller* rule was announced. *Chambers*, 831 N.W.2d at 321–31. More specifically, we held that the *Miller* rule was not retroactive under a *Teague*[4] analysis because it was a new, nonwatershed rule of criminal constitutional procedure. *Id.* at 330–31. Based on that holding, we concluded that Cham-

bers's petition was time barred because it did not fall within the exception in Minn. Stat. § 590.01, subd. 4(b)(3), for those who assert a new interpretation of federal law by the United States Supreme Court that is retroactively applicable to the petitioner's case. *Chambers*, 831 N.W.2d at 331.

On June 28, 2013, we lifted the stay in this case. On appeal, Roman Nose asserts three claims. First, he argues that the State's appeal is moot. Second, Roman Nose contends that the postconviction court did not err when it concluded that he was entitled to retroactive application of the rule announced in *Miller* because our decision in *Chambers* was wrongly decided. Third, he claims that even if the *Miller* rule does not apply retroactively to a juvenile whose sentence of LWOR became final before the *Miller* rule was announced, the circumstances of this case warrant granting him relief under our supervisory powers to ensure the fair administration of justice. We consider each argument in turn.

### I.

▉▉▉ We first turn to Roman Nose's argument that the State's appeal is moot because we cannot grant the relief that the State requests. We have held that if we

---

**3.** The postconviction court did not reach Roman Nose's alternative argument that his petition fell under the exception for those who establish that the petition is not frivolous and is in the interests of justice, Minn.Stat. § 590.01, subd. 4(b)(5) (2012). On appeal, Roman Nose does not suggest that we should grant him relief "in the interests of justice" under the statutory exception to the time bar. Not only did we note in *Chambers* that "none" of the exceptions in subdivision 4(b) would allow the court to hear Chambers' petition, *Chambers*, 831 N.W.2d at 331, we have made clear in the past that the "interests of justice" exception to the time bar cannot be based "on the substantive merit of the claim raised in the petition for postconviction re-

lief." *Sanchez v. State*, 816 N.W.2d 550, 557 (Minn.2012). Rather, the interests of justice exception "is triggered by an injustice that *caused* the petitioner to miss the primary deadline in subdivision 4(a), not the *substance* of the petition." *Id.* Here, there is no such alleged injustice that caused Roman Nose to miss the original deadline for filing his petition for postconviction relief. In addition, even if Roman Nose could meet the "interests of justice" exception to the time bar, he would still have to show that *Miller* is retroactive to be entitled to relief.

**4.** *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

are "unable to grant effectual relief, the issue raised is deemed to be moot resulting in dismissal of the appeal." *In re Schmidt*, 443 N.W.2d 824, 826 (Minn.1989). The State asks us to reverse the postconviction court's order resentencing Roman Nose and reinstate the LWOR sentence.[5] Roman Nose argues that we cannot resentence him to LWOR because such a sentence is unconstitutional under the Eighth Amendment, and thus we are unable to grant effectual relief to the State. He says that, "[r]efusing to vacate an unconstitutional sentence as this Court did in *Chambers* is one thing but *re-imposing* an unconstitutional sentence vacated by the district court is another matter entirely." At oral argument, Roman Nose suggested that if we resentence him to LWOR, we are "complicit" in violating his Eighth Amendment right to be free of cruel and unusual punishment. *See* U.S. Const. amend. VIII. We disagree.

Notably, Roman Nose does not cite any authority for the proposition that our exercise of appellate jurisdiction would violate the Eighth Amendment. Roman Nose also mischaracterizes what our court would be doing should we conclude that the postconviction court erred. The postconviction court's order resentenced Roman Nose to life with the possibility of release after 30 years. By holding that the postconviction court was wrong, we do not impose a new sentence of LWOR. Rather, we simply reinstate the original sentence of LWOR.

In short, we are able to grant effective relief in this case. Because we are able to grant effective relief, we hold that the State's appeal is not moot.

5. In the alternative, the State asks that if we conclude that *Miller* applies retroactively, we direct the postconviction court to hold a *Miller* hearing so the State can argue that Roman Nose still deserves a LWOR sentence. Ro-

## II.

We next turn to Roman Nose's argument that *Chambers* was wrongly decided, and therefore the postconviction court did not err when it concluded that Roman Nose was entitled to retroactive application of the *Miller* rule. Roman Nose contends that, contrary to our analysis in *Chambers*, the rule announced in *Miller* is both a substantive rule and a watershed procedural rule that implicates the fundamental fairness of the proceedings. Because *Chambers* was wrongly decided, Roman Nose argues, the postconviction court did not err in reaching a different conclusion on the retroactivity of *Miller*. We are not persuaded.

## A.

■ We recognize the importance of stare decisis in our decision making and are extremely reluctant to overrule precedent, requiring a "compelling reason" to do so. *State v. Martin*, 773 N.W.2d 89, 98 (Minn.2009); *State v. Lee*, 706 N.W.2d 491, 494 (Minn.2005). Roman Nose contends that we should reconsider our decision in *Chambers* for three reasons. None of these reasons, however, provides a compelling reason for us to overrule *Chambers*.

First, Roman Nose argues that we decided *Chambers* before the federal government "conceded that *Miller* is retroactive" in *Johnson v. United States*, 720 F.3d 720, 721 (8th Cir.2013). But as the State correctly points out, Roman Nose's timeline is wrong. On March 8, 2013, Chambers submitted the federal government's Response Brief in *Johnson v. United States*, 720 F.3d 720, as supplemental authority under Minn. R. Civ.App. P. 128.05. We there-

man Nose argues that we are also unable to grant this relief. Because *Miller* does not apply retroactively, we do not need to consider these arguments.

fore were aware of the federal government's concession in *Johnson* when we issued our decision in *Chambers* on May 31, 2013. As we concluded in *Chambers*, we also conclude here that the concession of the United States Attorney's Office does not prevent us from making an independent determination of whether *Miller* applies retroactively.

Second, Roman Nose argues that *Chambers* "failed to recognize that the Supreme Court already applied its holding in *Miller* retroactively to a case pending on state-court collateral review." As Roman Nose points out, the United States Supreme Court applied its *Miller* holding to the companion case, *Jackson v. Hobbs*, which was before the Court on collateral review. *See Miller*, —— U.S. ——, 132 S.Ct. at 2461–63 (discussing both *Jackson v. Hobbs* and *Miller v. Alabama* ). But we explicitly rejected a similar argument in *Campos v. State*, 816 N.W.2d 480, 494–95 (Minn. 2012).

In *Campos*, a defendant who had been deported after pleading guilty to robbery argued that the United States Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)—that the Sixth Amendment right to counsel includes the right to be informed about the deportation consequences of a guilty plea—applied retroactively to his case on collateral review. Campos argued that because *Padilla* arose in the context of a state postconviction proceeding, "*Padilla's* rule must be retroactive or . . . Padilla himself could not have benefited from it because he only raised the issue of his trial counsel's failure to advise him about the immigration consequences of his plea for the first time in his state post-conviction petition." *Campos*, 816 N.W.2d at 489. We were not convinced.

We acknowledged in *Campos*, that *Padilla* came to the United States Supreme Court on collateral review, and that the Court afforded Padilla relief, suggesting "that the Court did not intend *Padilla* to announce a new rule." *Campos*, 816 N.W.2d at 495. But because neither Padilla nor Kentucky raised the issue of retroactivity in their briefs, we "decline[d] to speculate as to the Court's intention on that issue simply based on the procedural posture of the case." *Id.* (citations omitted). Here, too, we are unwilling to conclude that the *Miller* rule is meant to be retroactive simply from the fact that the United States Supreme Court applied *Miller* retroactively to its companion case. In *Jackson*, as in *Padilla*, neither party raised the issue of retroactivity in their briefs and the issue was not discussed at oral argument.

Third, Roman Nose contends that *Chambers* is based on flawed reasoning. He argues that *Miller* actually created both a substantive and a watershed procedural rule that implicates the fundamental fairness of the proceedings. In *Chambers*, we concluded that the rule announced in *Miller* was procedural, not substantive. 831 N.W.2d at 328. We reached that conclusion because the *Miller* rule does not eliminate the power of the State to impose the punishment of LWOR on a juvenile who has committed a homicide offense. *Id.* In addition, we relied on the fact that relevant federal decisions had determined that "*Miller* is procedural." *Id.* Finally, we said that the *Miller* rule did not announce a new element of the offense. *Id.* at 329. For these three reasons, we held that *Miller* is procedural and not substantive. *Id.* at 329–30.

Having concluded that the *Miller* rule was a new rule of constitutional procedure, we considered whether the rule satisfied the second exception to retroactivity laid

out in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[6] The second exception is for watershed rules of criminal procedure that implicate the fundamental fairness of the proceedings. *Chambers*, 831 N.W.2d at 330. When determining whether a rule implicates the fundamental fairness of the proceedings, we are not bound by the United States Supreme Court's determination of fundamental fairness. *Danforth v. State*, 761 N.W.2d 493, 500 (Minn.2009). In *Chambers*, we concluded that the *Miller* rule was not a watershed rule of criminal procedure that implicates the fundamental fairness of the proceedings because it does not rise to the level of a rule such as *Gideon*[7] that alters our understanding of the bedrock procedural elements essential to the fairness of the proceeding.[8] *Chambers*, 831 N.W.2d at 331.

The analysis outlined above is well reasoned. That Roman Nose disagrees with our analysis in *Chambers* does not provide a compelling reason for us to depart from precedent.

### B.

■ Having reaffirmed *Chambers*, we consider whether the postconviction court erred when it concluded that Roman Nose's petition for postconviction relief was not barred by the time limitations set out in Minn.Stat. § 590.01, subd. 4 (2012). The postconviction court granted Roman Nose's petition, holding that it was not time barred because Roman Nose asserted a new interpretation of federal law by the United States Supreme Court that applies retroactively to his case, an exception to the time bar in Minn.Stat. § 590.01, subd. 4(b)(3). We review the postconviction court's legal determinations de novo. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012).

We recognize that the postconviction court here did not have the benefit of our decision in *Chambers* when it ruled on Roman Nose's petition. In *Chambers*, however, we held that the *Miller* rule does not apply retroactively to a juvenile whose sentence of LWOR became final before the *Miller* rule was announced. 831 N.W.2d at 331. Because Roman Nose's sentence became final in 2003, well before the *Miller* rule was announced, the *Miller* rule does not retroactively apply to him, and therefore we hold that the postconviction court erred in concluding that Roman Nose could seek relief from the postconvic-

---

**6.** The first exception to the *Teague* standard is a rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Chambers*, 831 N.W.2d at 323 (citation omitted) (internal quotation marks omitted). The first exception was not relevant in *Chambers*, nor is it relevant here.

**7.** *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**8.** Roman Nose asserts that because we are not bound by the United States Supreme Court's determination of fundamental fairness, *see Danforth*, 761 N.W.2d at 500, we have the ability to depart from the *Teague* framework entirely to declare any new rule of constitutional criminal procedure retroactive simply when it would be fair to do so. Based on that assertion, he urges us to apply the *Miller* rule retroactively in his case. This argument is unavailing for two reasons. First, our discussion of fundamental fairness in *Danforth* takes place within the context of deciding whether a new rule is a "watershed rule," which is part of the *Teague* framework. *Id.* Second, and perhaps more importantly, in *Chambers* we determined that the *Miller* rule is not a watershed rule of criminal procedure that implicates the "fundamental fairness" of the proceedings. 831 N.W.2d at 331. Although we may not be bound by the United States Supreme Court's determination of fundamental fairness, we are bound by the fundamental fairness determination we made in *Chambers*.

tion statute's time limitation in Minn.Stat. § 590.01, subd. 4.

## III.

■ Roman Nose next argues that even if *Miller* does not apply retroactively, we should still grant him relief under our supervisory powers to ensure the fair administration of justice. Under our supervisory powers, we have twice reduced the sentences of those convicted of crimes. *See State v. Burton,* 507 N.W.2d 842, 842 (Minn.1993) (affirming conviction for second-degree intentional murder but, consistent with *State v. Gilbert,* 448 N.W.2d 875 (Minn.1989), reducing defendant's sentence in the interests of justice to that of second-degree felony murder); *State v. Gilbert,* 448 N.W.2d 875, 876 (Minn.1989) (reducing defendant's sentence because of the "closeness of the issue" as to whether the evidence used to convict defendant of the greater charge was legally sufficient). We have also granted defendants new trials using these supervisory powers. *See, e.g., State v. Beecroft,* 813 N.W.2d 814, 846 (Minn.2012) (plurality opinion). But we have done so only in "exceptional circumstances," and we find no such exceptional circumstances here. *Id.*

Roman Nose's arguments about why he is entitled to relief fall into two categories: general arguments about the unjust imposition of LWOR for juveniles and specific arguments about his particular circumstances that entitle him to relief. Neither category of argument is persuasive.

Generally, Roman Nose argues that "[w]hile the *Miller* Court stopped short of imposing a categorical ban on LWOR sentences for juvenile offenders, it recognized that such a sentence is tantamount to a death sentence and it would be an 'uncommon' case where such a sentence does not constitute disproportionate punishment." He also argues that the failure to provide

remedial relief "will seriously undermine the integrity and public reputation of the Court." In *Chambers,* we did not consider the issue of whether we should grant the defendant relief under our supervisory powers to ensure the fair administration of justice because the parties had not briefed the issue. *Chambers,* 831 N.W.2d at 331 (Anderson, G. Barry, J., concurring) ("The parties here did not brief other potential avenues for relief under Minnesota law, so contrary to the dissent, I would not reach those questions."). But the general arguments that Roman Nose makes are similar to those advanced in the dissents. *Chambers,* 831 N.W.2d at 341 (Anderson, Paul, J., dissenting) (citing *In re Petition for Integration of the Bar of Minn.,* 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943)); *Chambers,* 831 N.W.2d at 346 (Page, J., dissenting).

As to Roman Nose's more specific arguments, he says that he is entitled to relief because "[t]he existing record . . . is replete with evidence of Roman Nose's pathological background," including evidence of physical and sexual abuse and evidence of a "dysfunctional and violent" personal history. Roman Nose contends that "[t]his record makes it abundantly clear that LWOR is a disproportionate sentence." We disagree with Roman Nose that his is the exceptional case that warrants granting him relief under our supervisory powers.

In this case, unlike *Gilbert,* a case where we reduced a defendant's sentence, the question of Roman Nose's guilt is not "close." 448 N.W.2d at 876 ("[O]ne cannot read the record without also realizing that the issue of whether defendant actually intended to kill [the victim] . . . is a close issue."). As detailed in our opinion affirming Roman Nose's conviction, forensic and physical evidence tied Roman Nose to the murder. *See Roman Nose,* 667 N.W.2d at

390–91 (describing forensic and physical evidence). Indeed, we said that the "evidence of Roman Nose's guilt" was "overwhelming." *Id.* at 404.

Moreover, Roman Nose's argument that his specific age related characteristics warrant an exercise of our supervisory powers is simply an end run around our holding that *Miller* does not retroactively apply to juveniles whose conviction and sentence became final before *Miller* was decided. We have never used our supervisory powers to effectively overrule precedent for only one defendant while maintaining case law on the books that binds others who are similarly situated, and we decline to do so now.

Finally, unlike the juvenile in *Miller*, who committed his offense when he was 14 years old, Roman Nose committed his offense 2 months before he turned 18. Thus, any immaturity, impetuosity, or failure to appreciate risks and consequences that was due to Roman Nose's age was not appreciably greater than that of an average 18–year–old. And, as the postconviction court concluded, as a practical matter, the procedures set forth in *Miller* cannot be applied to Roman Nose. The postconviction court emphasized that so much time had passed that there would be difficulties "applying appropriate consideration to his age, life history, home environment, and other circumstances as dictated, or at least implied, by the Supreme Court." Under these circumstances, affording Roman Nose the benefit of the *Miller* procedures will not ensure the fair administration of justice. Instead, the integrity and public reputation of the court will be undermined if Roman Nose receives a reduced sentence simply because the passage of time prevents a meaningful implementation of the *Miller* procedures. In light of Roman Nose's age, the brutal nature of his crime, and the overwhelming evidence of his guilt, such a windfall would undermine the public confidence in the judicial system.

Reversed, sentence reinstated.

**G. BARRY ANDERSON**, Justice (concurring).

I join with the majority, as I believe the result in this case is dictated by *Chambers v. State*, 831 N.W.2d 311 (Minn.2013), and Roman Nose has not presented any compelling reason for overruling that decision. In *Chambers*, we analyzed the retroactivity of *Miller v. Alabama*, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) using the standard for retroactivity laid out in *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[1] Although I joined *Chambers*, and I join the majority today, I write separately because it is my view that the *Miller* retroactivity analysis fits awkwardly, at best, in the *Teague* framework, and those tensions are also present in the case we decide today.

First, the rule announced in *Miller* has characteristics of *both* a substantive and a procedural rule. The primary distinction between retroactive and non-retroactive rules under *Teague* is whether the rule is procedural or substantive. 489 U.S. at 311, 109 S.Ct. 1060. But *Teague* does not address what should be done with rules that do not fit neatly into either of these boxes, and the *Miller* rule is one such case.[2] Many retroactivity decisions deal

---

1. The arguments in *Chambers* and, to a lesser extent in the case today, largely focused on the *Teague* retroactivity standard and did not extend to, for example, any claims that may exist for postconviction relief under the Minnesota Constitution. Those arguments are left for another day.

2. My concern about the difficulty in classifying *Miller* as either substantive or procedural

with issues that are clearly procedural, such as the types of admissible evidence[3] or whether certain decisions should be made by a judge as opposed to a jury.[4] But *Miller* holds that mandatory LWOR for juveniles constitutes cruel and unusual punishment, —— U.S. at ——, 132 S.Ct. at 2469, and this seems close to prohibiting a certain type of punishment for a class of individuals, which is a hallmark of a substantive decision. *See Schriro v. Summerlin,* 542 U.S. 348, 351–52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (noting that a rule is substantive if it places particular conduct or persons covered by the statute beyond the State's power to punish). *Miller* also potentially introduces a new element, age, into our sentencing structures, with the result that Minnesota's sentencing statute mandating LWOR must now be read as beginning with an implicit additional condition of "If the defendant is over 18." This is another indication that *Miller* may be a substantive rule. *See Schriro,* 542 U.S. at 354, 124 S.Ct. 2519 ("A decision that modifies the elements of an offense is normally substantive rather than procedural.").

But *Miller* also has procedural elements, as it can be viewed as simply adding one step, the consideration of mitigating factors related to age, to the process of sentencing juveniles who would otherwise be sentenced to LWOR. And although *Miller* suggests that LWOR will rarely be an appropriate sentence for a juvenile, it did not prohibit this type of sentence, which is a strong indication that *Miller* is a procedural decision. Put another way, I generally agree with the majority in *Chambers* and the majority in our decision today that the better argument, based on the current state of the law, is that the *Miller* rule is procedural. But the mixed nature of the analysis makes this outcome far from certain, and given the consequences, very troubling.

Second, although I am skeptical of the wisdom of the *Miller* approach to juvenile LWOR sentences, I leave the analysis and criticism of *Miller* to others. Instead, it is worth noting that as a result of *Miller,* there is a legislative and public policy component to what unfolds next, and it is appropriate to defer, at least in the first instance, to the policy-making branch. It is to the Legislature we look first to decide whether juvenile LWOR sentences will continue, whether they will be retroactive for those already sentenced, and what type of sentencing requirements and proce-

was recently echoed by the Nebraska Supreme Court. The court stated, "Under the *Teague/Schriro* retroactivity analysis, the distinction between substance and procedure is important. But how the rule announced in *Miller* should be categorized is difficult, because it does not neatly fall into the existing definitions of either a procedural rule or a substantive rule." *State v. Mantich,* 287 Neb. 320, 842 N.W.2d 716, 729 (2014). The Nebraska court, concluding that "the rule announced in *Miller* is more substantive than procedural," applied *Miller* retroactively. *Id.* at 731.

3. *See e.g., Whorton v. Bockting,* 549 U.S. 406, 421, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) (concluding that the new procedural rule in

*Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), involving the admissibility of testimonial evidence, was not a watershed rule and, therefore, does not apply retroactively); *Butler v. McKellar,* 494 U.S. 407, 415–16, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (concluding that a new rule declaring certain statements inadmissible under the Fifth Amendment did not apply retroactively).

4. *See Schriro v. Summerlin,* 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (noting that "[r]ules that allocate decision-making authority ... are prototypical procedural rules" and concluding that a rule requiring a finding of an aggravating factor by a jury instead of a judge was not retroactive).

dures will be enacted to deal with the mandates of *Miller*.

Finally, it is important to recognize that the effect of *Miller*, aggravated by varying judicial decisions on the issue of retroactivity, is a significant disparity in outcome for individuals in a similarly situated class. Put more bluntly, some defendants, after decades of incarceration, will have at least an opportunity for release, and others will certainly die in prison. And that difference is driven not by traditional sentencing considerations (e.g., the severity of the offense),[5] but only by the date of the offense or by the state of residence.[6]

Because I conclude, based on the current state of the law, that a compelling reason has not been advanced to overrule *Chambers*, I concur in the majority opinion.

STRAS, Justice (concurring).

I join all but Part III of the court's opinion because I continue to doubt our authority to reduce sentences or reverse convictions in the interests of justice or under some comparable, "highly subjective" power, *State v. Beecroft*, 813 N.W.2d 814, 867–68 (Minn.2012) (Stras, J., dissenting), such as a supervisory power over the district courts. Here, the court entertains the possibility of reducing Roman Nose's sentence based on "our supervisory powers to ensure the fair administration of justice," despite having correctly concluded that there is no reversible error. Be-

cause the court can identify no grant of power to the judiciary that would allow it to reduce a person's sentence in the absence of error, I would categorically reject Roman Nose's request for relief and proceed no further. *See id.* at 867 (observing that there is no constitutional basis for reversing prophylactically in the "interests of justice"); *see also State v. M.D.T.*, 831 N.W.2d 276, 284 (Minn.2013) (Stras, J., concurring) (stating that the authority of the judicial branch is limited to the grant of "judicial power" in the Minnesota Constitution).

LILLEHAUG, Justice (concurring).

I concur. While respondent's attorney has made a creative argument, I agree with the majority that this appeal is not moot. On the remaining issues, I concur because the controlling authority is *Chambers v. State*, 831 N.W.2d 311 (Minn.2013), which we are bound to follow under the doctrine of stare decisis. One can only hope that the United States Supreme Court will take its earliest opportunity to clarify whether *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), applies retroactively.

PAGE, Justice (dissenting).

For the reasons set forth in section I of my dissent in *Chambers v. State*, 831 N.W.2d 311, 342–44 (Minn.2013) (Page, J., dissenting), and Justice Paul Anderson's dissent in that case, *id.* at 331–42

---

**5.** It is undisputed that the defendants seeking a retroactive application of *Miller*, as well as those to whom *Miller* has already been applied, have committed extremely serious, heinous crimes.

**6.** Several states have applied *Miller* to cases on collateral review. *See State v. Ragland*, 836 N.W.2d 107, 117 (Iowa 2013) (concluding *Miller* applies retroactively as a substantive rule); *Diatchenko v. Dist. Attorney for Suffolk*

*Dist.*, 466 Mass. 655, 1 N.E.3d 270, 281 (2013) (same); *Jones v. State*, 122 So.3d 698, 703 (Miss.2013) (same); *Mantich*, 842 N.W.2d at 731 (concluding that the rule in *Miller* is more substantive than procedural, and so it should apply retroactively). Thus, it is not only defendants whose cases were not final at the time *Miller* was announced that receive the protections of *Miller*, but also defendants who were sentenced in these states.

(Anderson, Paul, J., dissenting), I respect-fully dissent.