**Kim Thul OUK, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A13–1959.

Supreme Court of Minnesota.

June 11, 2014.

Kim Thul Ouk, Rush City, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and John J. Choi, Ramsey County Attorney, Laura Rosenthal, Assistant Ramsey County Attorney, Shea Thomas, Certified Student Attorney, Saint Paul, Minnesota, for respondent.

## OPINION

ANDERSON, Justice.

In 1992, a jury found then–15–year–old appellant Kim Thul Ouk guilty of two counts of first-degree murder and two

counts of attempted first-degree murder. Each count involved a separate victim. The district court imposed two mandatory life sentences with the possibility of release and two 15–year sentences. In June 2013 Ouk filed a postconviction motion to correct his sentence, citing *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 2475, 183 L.Ed.2d 407 (2012), in which the United States Supreme Court held that, as applied to juveniles, sentencing schemes mandating life without the possibility of release violate the Eighth Amendment's prohibition on cruel and unusual punishments. The postconviction court denied Ouk's motion, concluding that Ouk's sentence was lawful because *Miller* is not retroactive. On appeal Ouk asks "that his sentence be vacated and remand[ed] for individualize[d] resentencing in accordance with the process articulated in *Miller.*" [1] Because we conclude that a statutory scheme mandating a sentence of life imprisonment *with* the possibility of release is materially different from a statutory scheme mandating a sentence of life imprisonment *without* the possibility of release, we affirm.

## I.

Ouk's convictions arose out of events in the early hours of June 8, 1992, when Ouk and seven other teenagers coordinated the armed robbery of two Saint Paul gas stations.[2] At the time of the robberies, Ouk was 15 years and 2 months old. Ouk and the others stole three cars and drove to an intersection in the Highland Park neighborhood where two gas stations, a Total Mart and an Amoco, were located across the street from each other. The teenagers then divided into two groups. One group, carrying a .22–caliber handgun reportedly obtained from Ouk, went to rob the Amoco station. The other group, consisting of Ouk and four others, took a .38–caliber semiautomatic handgun and robbed the Total Mart. During the robbery of the Total Mart, two clerks and two customers were shot. Both of the clerks died from their wounds. The customers survived, but they required emergency medical treatment. All of the victims were shot at close range and there was no evidence of resistance prior to the shootings.

Some of the teenagers who had robbed the Total Mart with Ouk were pulled over for a traffic violation about one hour later. Noting that the car had been stolen and that it contained several items from the Total Mart, the police took the teenagers to the police station for questioning. During questioning, several of the teenagers stated that Ouk, who was not with them in the car, had carried the gun during the Total Mart robbery. After obtaining a search warrant for Ouk's house, more than 20 police officers surrounded the house and, after several hours of negotiating over the phone, Ouk was arrested. During an interrogation, Ouk admitted to being in the

---

1. On appeal, Ouk asserts two additional claims. First, he claims his sentence is unlawful under the rule announced in *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). This claim fails because *Graham* does not apply to juvenile homicide offenders. *See Chambers v. State,* 831 N.W.2d 311, 320 (Minn.2013). Second, Ouk claims his sentence unfairly exaggerates his criminality. We decided an identical claim in Ouk's direct appeal, *see State v. Ouk,* 516 N.W.2d 180, 186 (Minn.1994) (concluding that Ouk's sentence did not exaggerate his criminality), and we once again reject that claim here. To the extent that Ouk challenges his sentence based on more generalized public policy arguments, we rejected similar arguments in *Roman Nose v. State,* 845 N.W.2d 193, 201–02 (Minn.2014).

2. The underlying facts of the case are laid out extensively in *State v. Ouk,* in which we affirmed Ouk's convictions on direct appeal. 516 N.W.2d 180, 180–84 (Minn.1994).

Total Mart and taking cigarettes, but denied shooting anyone.

A jury found Ouk guilty of two counts of first-degree murder in violation of Minn. Stat. § 609.05 (2012), and Minn.Stat. § 609.185(3) (1992), and two counts of attempted first-degree murder, in violation of Minn.Stat. § 609.05, Minn.Stat. § 609.17 (2012), and Minn.Stat. § 609.185(3). Under the mandatory sentencing scheme for section 609.185, the district court was required to impose life sentences with the possibility of release after 30 years for the first-degree murder convictions.[3] *See* Minn.Stat. § 244.05, subd. 4 (1992); Minn. Stat. § 609.185 (1992). The presumptive guideline sentence for the two attempted first-degree murder convictions was 180 months for each offense. Minn. Sent. Guidelines II.G (1992). After receiving briefs from the parties and statements representing the interests of the victims' families and Ouk's family, the district court imposed an aggregated sentence that was consistent with the mandatory sentencing scheme of section 609.185 and the Minnesota Sentencing Guidelines.[4]

On May 13, 1994, we affirmed Ouk's convictions and aggregated sentence on direct appeal. *State v. Ouk*, 516 N.W.2d 180 (Minn.1994). We held that Ouk had made a knowing and intelligent waiver of his *Miranda* rights, that the evidence was sufficient to sustain his convictions, and that his aggregated sentence did not exaggerate his criminality. *Id.* at 186.

■ Eighteen years later, on June 25, 2012, the United States Supreme Court held in *Miller v. Alabama* that as applied to juveniles, sentencing schemes mandating life imprisonment without the possibility of release violate the Eighth Amendment's prohibition on cruel and unusual punishments. —— U.S. at ——, 132 S.Ct. at 2460. The Supreme Court analogized life without the possibility of release to the death penalty. *Id.* at ——, 132 S.Ct. at 2463–64, 2468. But the Court did not categorically prohibit a sentence of life without the possibility of release in juvenile homicide cases, instead holding only that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at ——, 132 S.Ct. at 2475. Among the factors to be considered before imposing a sentence of life imprisonment without the possibility of release are the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at ——, 132 S.Ct. at 2468.

---

**3.** Although Ouk's violations and attempted violations of Minn.Stat. § 609.185(3) qualified as heinous crimes under a 1992 statute, the district court was not required to sentence Ouk to life imprisonment without the possibility of release because Ouk did not have any previous convictions for a heinous crime. Minn.Stat. § 609.184, subd. 2(2) (1992) (mandating life imprisonment without the possibility of release where "the person is convicted of first degree murder under section 609.185, clause (1), (3), (4), (5), or (6), and the court determines on the record at the time of sentencing that the person has one or more previous convictions for a heinous crime").

**4.** In accordance with Minn. Sent. Guidelines II.F.2 (1992) (authorizing permissive consec-

utive sentences "[w]hen the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines"), the district court imposed Ouk's sentences consecutively. Under Ouk's aggregated sentence, he must serve a minimum of two 30–year terms (for his two life sentences resulting from his first-degree murder convictions), plus two 10–year terms (representing two-thirds of his original 15–year sentences for his attempted first-degree murder convictions), before he is eligible for supervised release. Minn.Stat. § 244.04, subd. 1 (1992); Minn.Stat. § 244.05, subd. 4.

On June 3, 2013, Ouk filed a postconviction motion to correct his sentence under Minn. R.Crim. P. 27.03, subd. 9, which allows a court to correct a sentence that is not authorized by law. Ouk claimed his 1992 sentence violated the rule announced in *Miller*.[5] Ouk based his claim on four assertions. First, the mandatory penalty scheme at issue here prevents the sentencer from considering youth before imposing the law's harshest term of imprisonment. Second, his aggregated sentence was the functional equivalent of life without the possibility of release. Third, the rule announced in *Miller* is retroactive. Fourth, the district court failed to comply with the procedures set forth in *Miller*. The postconviction court summarily denied Ouk's motion to correct his sentence, concluding that *Miller* is not retroactive. This appeal follows.[6]

## II.

On appeal, Ouk renews his assertion that the *Miller* rule should be applied retroactively.[7] Based on that assertion, he contends the postconviction court abused its discretion when it denied his motion to correct his sentence.

We review a district court's denial of a motion to correct a sentence for an abuse of discretion. *Townsend v. State*, 834 N.W.2d 736, 738 (Minn.2013). "A court abuses its discretion when its decision is based on an erroneous view of the

law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn.2011).

We recently addressed the retroactivity of the *Miller* rule in *Chambers v. State*, 831 N.W.2d 311 (Minn.2013), and *Roman Nose v. State*, 845 N.W.2d 193 (Minn.2014). Before the rule in *Miller* was announced, the defendants in *Chambers* and *Roman Nose* were sentenced under Minn.Stat. § 609.106, subd. 2(1) (2012), which, like the statute in *Miller*, mandated a sentence of life imprisonment *without* the possibility of release. Consequently, *Chambers* and *Roman Nose* squarely presented the issue of whether *Miller* should be applied retroactively.

Unlike the defendants in *Chambers* and *Roman Nose*, Ouk was sentenced under Minn.Stat. § 609.185(3) and Minn.Stat. § 244.05, subd. 4(b), which mandate a sentence of life imprisonment *with* the possibility of release after 30 years. Because a mandatory sentence of life imprisonment with the possibility of release after 30 years is not encompassed within the rule in *Miller*, the issue of whether *Miller* should be applied retroactively is not squarely before us. Put differently, the mandatory sentencing scheme at issue in Ouk's case does not violate the rule announced in *Miller* because it does not require the imposition of the harshest term of imprisonment: life imprisonment without the possibility of release. *See State v.*

---

5. Ouk also argued that Minnesota's high rate of incarcerating juveniles for life violates international law. This issue was not addressed by the postconviction court and Ouk does not raise it for review here.

6. On February 24, 2014, Ouk filed a motion asking us to accept a certificate of service in connection with his reply brief. We now grant that motion.

7. In his brief to this court, Ouk does not argue that his sentence violates *Miller* be-

cause it is the functional equivalent of a life sentence without the possibility of release. Failure to brief or argue an issue on appeal results in waiver of that issue on appeal. *Brocks v. State*, 753 N.W.2d 672, 675 n. 3 (Minn.2008). We therefore need not, and do not, decide the issue of whether the imposition of permissive consecutive sentences totaling 80 years is functionally equivalent to a life sentence without the possibility of release and thus potentially implicates the *Miller* rule.

*Vang*, 847 N.W.2d 248, 2014 WL 1805320, *9 (Minn. May 7, 2014). Therefore, because *Miller* did not make the sentencing scheme at issue here unlawful, we affirm the postconviction court's denial of Ouk's motion to correct his sentence without reaching the issue of *Miller*'s retroactivity.

Affirmed.