Patricia Agnes **FEDZIUK**, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. A04–2328.

Supreme Court of Minnesota.

May 19, 2005.

Mike Hatch, Attorney General, Jeffery Lebowski, Sean McCarthy, Assistant Attorney General, St. Paul, MN, for Appellant.

Jeffery S. Sheridan, Strandemo, Sheridan & Dulas, Eagan, MN, Respondent.

Stephen Simon, Attorney at Law, University of Minnesota, Minneapolis, MN, for Amicus Curiae Criminal Justice System DWI Task Force.

## OPINION

HANSON, J.

In this declaratory judgment action, respondent Patricia Fedziuk asked the district court to hold that Minnesota's Implied Consent Law, as amended in 2003, violates procedural due process. The district court determined that the Implied Consent Law's prehearing revocation procedures violate due process. Because of the statewide impact of its decision, the court stayed its order and certified two questions as "important and doubtful":

1. Does Minnesota's implied consent scheme of prehearing revocation offend a driver's state and/or federal constitutional guarantees of due process of law?

2. Is the 1980 version of the implied consent law revived by the declaration that the current implied consent law is unconstitutional? If not, what version, if any, is revived if the current law is struck down?

We granted accelerated review.

We have upheld the constitutionality of the pre–2003 versions of the Implied Consent Law in three decisions: *Heddan v. Dirkswager*, 336 N.W.2d 54 (Minn.1983); *Davis v. Comm'r of Public Safety*, 517 N.W.2d 901 (Minn.1994); *Hamilton v. Comm'r of Public Safety*, 600 N.W.2d 720 (Minn.1999). We now hold that the 2003 amendments to the Implied Consent Law, which removed the requirement for prompt judicial review of a prehearing revocation, rendered the Implied Consent Law unconstitutional as violative of due process and that the version of the Implied Consent Law that existed immediately prior to the 2003 amendments is revived.

The essential facts are not in dispute. Fedziuk was arrested on October 23, 2003, for driving while impaired. The police officers invoked the Implied Consent Law and tested her alcohol concentration. The toxicology report from Fedziuk's blood test did not reveal alcohol in her blood, but reported that the concentration of amphetamine (a Schedule II substance) was 0.17 milligrams per liter.

On March 24, 2004, the Commissioner of Public Safety informed Fedziuk that her driver's license would be revoked for 90 days, effective April 3, 2004. *See* Minn. Stat. § 169A.52, subd. 4(a)(1) (2002). On April 2, 2004, Fedziuk requested administrative review of the revocation. With that request, Fedziuk raised an affirmative de-

fense under Minn.Stat. § 169A.46 (2004)[1] that the presence of the schedule II controlled substance in her system at the time of her arrest was pursuant to a prescription. She included a letter from her medical doctor stating that she had been taking prescription medication, but the letter did not indicate whether Fedziuk had used the medication as prescribed. On April 14, 2004, the Department of Public Safety sustained the revocation of her driver's license after the administrative review.

Fedziuk also filed for judicial review on or about April 2, 2004. Her implied consent trial date was set for June 1, 2004, within 60 days of the date Fedziuk filed her petition for judicial review.[2]

Fedziuk also filed a complaint on April 27, 2004, seeking judgment under the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01–.16 (2004). She requested a finding and declaration that "Minnesota's Implied Consent Law is unconstitutional as a violation of due process." She also requested that the revocation of her driving privileges be rescinded and that a permanent injunction be issued against the Commissioner to prohibit further enforcement of the Implied Consent Law.

Soon after filing her declaratory judgment action, Fedziuk supplied the Commissioner with information that corroborated her affirmative defense that she had taken her medication according to terms of her prescription. Based on Fedziuk's affirmative defense, the Commissioner administratively rescinded the revocation of Fedziuk's driver's license and references to the incident were removed from Fedziuk's driving record.

Fedziuk nevertheless pursued the declaratory judgment action and filed a motion for summary judgment. The Commissioner argued that Fedziuk's action was moot and that she lacked standing because her license revocation had been rescinded. The Commissioner also argued that Fedziuk failed to demonstrate that she did not have an adequate remedy at law because Fedziuk could have sought temporary reinstatement of her license or moved for an expedited judicial review.

■■■ The district court denied the Commissioner's procedural objections and granted summary judgment to Fedziuk, declaring that several of the prehearing revocation procedures, including but not limited to those added with the 2003 amendments, violated Fedziuk's due process rights. The court did not grant Fedziuk's request for a statewide injunction at that time. But, on November 22, 2004, the district court issued an amended order declaring all of the Implied Consent Law's prehearing revocation procedures unconstitutional and determining that the 1980 version of the Implied Consent Law, which did not authorize any prehearing revocation, was revived. Because of the statewide impact of its decision, the court stayed its order and certified the two questions under Minn. R. Civ.App. P. 103.03(i) as "important and doubtful." The Commissioner moved for accelerated review

1. Minnesota Statutes § 169A.46, subd. 2, provides:

   If proven by a preponderance of the evidence, it is an affirmative defense to a violation of section 169A.20 subdivision 1, clause (7) (presence of schedule I or II controlled substance), that the defendant used the controlled substance according to the terms of a prescription issued for the defendant in accordance with sections 152.11 and 152.12.

2. Fedziuk applied for and was granted a limited license under Minn.Stat. § 171.30 (2004). The limited license allowed Fedziuk to drive her minor daughter to and from school and medical appointments and, during one 3–hour window each week, to get groceries and other household necessities.

under Minn. R. Civ.App. P. 118, which we granted.[3]

Certified questions are questions of law that we review de novo. *Clark v. Lindquist,* 683 N.W.2d 784, 785 (Minn. 2004). The district court may certify a question to the court of appeals that is important and doubtful. Minn. R. Civ. App. P. 103.03(i). A question that is doubtful need not be one of first impression, but it should be one on which there is substantial ground for a difference of opinion. *Jostens, Inc. v. Federated Mut. Ins. Co.,* 612 N.W.2d 878, 885 (Minn.2000). A question is increasingly important if: (1) it will have statewide impact, (2) it is likely to be reversed, (3) it will terminate lengthy proceedings, and (4) the harm inflicted on the parties by a wrong ruling by the district court is substantial. *Id.* at 884. We conclude that the district court properly certified the questions for appellate review. The decision will have statewide impact and many litigants await our answers to these questions.

## I.

We must first decide whether Minnesota's Implied Consent Law, as amended in 2003, violates a driver's due process guarantees.[4] We review issues of constitutional interpretation de novo. *Star Tribune Co. v. Univ. of Minnesota Bd. of Regents,* 683 N.W.2d 274, 283 (Minn.2004). The party challenging a statute has the burden of demonstrating, beyond a reasonable doubt, that a constitutional violation

has occurred. *Heidbreder v. Carton,* 645 N.W.2d 355, 372 (Minn.2002). If possible, we must interpret a statute to uphold its constitutionality. *St. Paul Cos., Inc. v. Hatch,* 449 N.W.2d 130, 137 (Minn.1989).

In 1982, the Minnesota legislature amended the Implied Consent Law to permit prehearing revocation of drivers' licenses in certain specified circumstances. Act of March 19, 1982, ch. 423, § 9, 1982 Minn. Laws 288, 295 (codified at Minn. Stat. § 169.123, subd. 5 (1982)). In *Heddan,* we upheld these 1982 amendments to the Implied Consent Law against due process challenges. 336 N.W.2d at 59–63. We employed a three-part test established by the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for identifying whether due process requires a hearing before property interests are taken away. *Heddan,* 336 N.W.2d at 59 (citing *Mathews,* 424 U.S. at 334–35, 96 S.Ct. 893). Under *Mathews,* a court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

**3.** We do not regard Fedziuk's action as moot or that she lacks standing to bring it because an appeal is not moot "where the issue raised is capable of repetition yet evades review or where collateral consequences attach to the judgment." *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). Issues raised in the certified questions are capable of repetition and could evade review. Because of the relatively short duration of license revocations—from 90 days to 360 days for test failure—the revo-

cation period could end before an appeal is completed. Accordingly, we will decide the certified questions on their merits.

**4.** Both the United States and Minnesota Constitutions provide that a person shall not be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7.

*Mathews,* 424 U.S. at 334–35, 96 S.Ct. 893. In *Heddan,* we determined that each of the three factors weighed in favor of upholding the prehearing revocation because of substantial protections provided under the statute, including the short duration of the suspension, the immediate availability of limited licenses in hardship cases, and the requirement for prompt postrevocation review in two forms: an immediate administrative review and a prompt judicial review. 336 N.W.2d at 60–63. Our decision to uphold the 1982 amendments was based in part on a side-by-side comparison of Minnesota's Implied Consent Law with a Massachusetts law permitting prehearing revocation of drivers' licenses that the Supreme Court upheld on due process grounds in *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). *Heddan,* 336 N.W.2d at 59–63. In general, we concluded that Minnesota's law provided more procedural protections than the Massachusetts law that was upheld in *Montrym. Heddan,* 336 N.W.2d at 59–60.

In 1992, the legislature reduced those protections when it added a 15–day waiting period before a driver whose license had been rescinded could apply for a limited license and increased the legal consequences of a revocation by allowing it to be used to enhance a future DWI. Act of April 17, 1992, ch. 570, art. 1, § 23, 1992 Minn. Laws 1944, 1961; *id.,* § 7 at 1948 (codified at Minn.Stat. §§ 169.121, subd. 3a; 171.30, subd. 2a (1992)). In *Davis,* we held that extending the waiting period for a limited license did not violate due process. 517 N.W.2d at 904–05. We did not address the enhancement effect.[5]

In 1997, the legislature doubled the periods of revocation and the waiting period for applying for limited licenses for drivers whose testing showed an alcohol concentration of 0.20 or more. Act of June 27, 1997, ch. 2, § 56, 1997 Minn. Laws 1st Spec. Sess. 3150, 3183 (codified at Minn. Stat. § 171.30, subd. 2c (Supp.1997)). In *Hamilton,* we upheld this change as not altering the basic analyses of *Heddan* and *Davis.* 600 N.W.2d at 724.

Essentially, *Heddan, Davis* and *Hamilton* recognize that the 1982 changes to the Implied Consent Law that permitted the prehearing revocation of drivers' licenses were firmly within the boundaries of the Massachusetts law found constitutional in *Montrym* and that the 1992 and 1997 changes brought Minnesota law closer to, but not outside, the *Montrym* boundary lines. We see no reason to disturb this precedent. Accordingly, our focus is on whether the 2003 amendments have so eroded an essential protection of the Implied Consent Law as to render it unconstitutional.

█ Prior to the 2003 amendments, the provision for judicial review of a prehearing revocation stated: "[t]he hearing must be held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." Minn.Stat. § 169A.53, subd. 3a (2002). The statute did not specify consequences for failing to hold such a hearing within 60 days except to authorize the court to stay the balance of the revocation if the hearing was not held within 60 days. Minn.Stat. § 169A.53, subd. 2c (2002).

---

**5.** Fedziuk and the district court both discussed the impact of using civil license revocations to enhance criminal sentences. The 1992 amendment does heighten the consequences of a revocation, but we will not consider the matter in connection with these certified questions because Fedziuk's license revocation was erased from her driving record and cannot be used against her in a subsequent adjudication. Because the potential enhancement has no immediate impact on a prehearing revocation under the Implied Consent Law, we defer consideration of it to a case where enhancement is sought.

The 2003 amendments retained authority for a court to stay a revocation if a hearing is not held in 60 days but deleted the requirement that the hearing be "held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." Act of May 24, 2003, ch. 2, art. 9, § 13, 2003 Minn. Laws 1st Spec. Sess. 1384, 1451.

■ By eliminating the requirement for prompt postrevocation judicial review, the 2003 amendments affected the driver's private interest in continued possession and use of the license pending the outcome of a hearing, the first part of the three-part test from *Mathews*. *Heddan*, 336 N.W.2d at 60 (citing *Montrym*, 443 U.S. at 11–12, 99 S.Ct. 2612).[6] The other factors from *Mathews*—the risk of erroneous deprivation and the government's interest—have not changed since we last approved the constitutionality of the Implied Con-

sent Law.[7] Accordingly, we must determine whether immediately available administrative review, combined with the now unspecified period for judicial review, provides a sufficiently meaningful postrevocation review that protects the driver's private interest, and consequently the driver's due process rights.

■ Due process requires a prompt and meaningful postrevocation review. In *Barry v. Barchi*, the Supreme Court considered the constitutionality of a prehearing suspension of a horse trainer's license. 443 U.S. 55, 64–65, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). The Court stated, "[o]nce suspension has been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount, it seems to us. We also discern little or no state interest * * * in an appreciable delay in going forward with a full hearing."

---

6. The weight given the private interest depends on three factors: (1) the duration of the revocation, (2) the availability of hardship relief, and (3) the availability of prompt postrevocation review. *Heddan*, 336 N.W.2d at 60 (citing *Montrym*, 443 U.S. at 11–12, 99 S.Ct. 2612). Factors (1) and (2) have not changed since we last approved the constitutionality of the Implied Consent Law.

The maximum license revocation under Minn.Stat. § 169A.52, subd. 4 (2004) for test failures is 360 days. Fedziuk's revocation, had it not been rescinded, would have been for 90 days. The Supreme Court has upheld a prehearing revocation statute that included suspensions that lasted for a year or more. *See Dixon v. Love*, 431 U.S. 105, 108, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). We also did not find constitutional significance in a 360-day revocation for test results indicating an alcohol concentration of .20 or more for a person with a prior impaired license revocation in the past 5 years. *See Hamilton*, 600 N.W.2d at 722.

Minnesota law also provides hardship relief. A driver whose license is revoked is provided advance notice. *See* Minn.Stat. § 169A.52, subd. 6 (2004); *see also* Minn.Stat. § 169A.52, subd. 7 (2004) (7–day temporary

license when revocation is for test refusal). A driver whose license has been revoked may also apply for a limited license under Minn. Stat. § 171.30 (2004) under certain conditions, including work, family needs, and school. Although a limited license is not immediately available (a first-time offender must wait at least 15 days before applying, Minn. Stat. § 171.30, subd. 2a(1)), we have upheld as constitutional the lack of immediate hardship relief after revocation. *Davis*, 517 N.W.2d at 904–05 (wait of 15 days); *Hamilton*, 600 N.W.2d at 721–22, 724 (wait of 30 days).

7. Fedziuk argues that drivers who have an affirmative defense for prescription drugs "will always suffer an erroneous revocation that will remain in effect until the driver can get a fact finder to listen." Although she argues the difficulties related to proving an affirmative defense under the erroneous deprivation factor, we note that her argument is based on her contention that the administrative review is inadequate and the judicial review is delayed. Questions involving the promptness of postrevocation review involve the driver's private interest, and we will consider it under that factor from *Mathews*.

*Id.* at 66, 99 S.Ct. 2642. The Court determined that the prehearing suspension violated due process because the provision for a hearing did not assure a prompt proceeding or prompt disposition of the case. *Id.*[8]

Judicial review under the Implied Consent Law would of course be meaningful, but after the 2003 amendments, there is no requirement that it be prompt. Accordingly, we must examine whether the alternative administrative review preserves due process rights because it is both prompt and meaningful.[9] The administrative review is required to be prompt, so the question is whether it is sufficiently meaningful.

The Implied Consent Law provides for an immediately available administrative review and requires the Commissioner to provide a written decision within 15 days of receiving the request. Minn.Stat. § 169A.53, subd. 1(a) (2004). The driver whose license has been revoked may make a written request for an administrative review at any time during the period of license revocation. *Id.* The Commissioner's role in this review is to "review the order, the evidence upon which the order was based, and any other material information brought to the attention of the commissioner, and determine whether sufficient cause exists to sustain the order." *Id.; see also* Minn. R. 7409.4600, subp. 3 (2003). Availability of administrative re-

view does not affect availability of judicial review. Minn.Stat. § 169A.53, subd. 1(b).

Rules of the Public Safety Department further define a driver's right to administrative review. A hearing is initiated when the driver submits a written request for review, and the hearing may be held by written correspondence or by a personal appearance. Minn. R. 7409.4600, subp. 2 (2003). The Commissioner must review the order, evidence upon which the order was based, "and any other material information brought to the attention of the commissioner to determine whether sufficient cause exists to sustain the order." Minn. R. 7409.4600, subp. 3. The rules do not expressly limit a driver's ability to bring witnesses to the hearing, but neither do they expressly authorize it. The rules do not provide for subpoenaing or cross-examining witnesses. *See id.,* subp. 3 ("The commissioner may seek additional information from the person requesting the review or hearing or from an agency or person believed to have information relating to the facts underlying the order of withdrawal.").

We conclude that Minnesota's administrative review, although prompt, does not provide a sufficiently meaningful review to overcome due process concerns triggered by the 2003 amendment of elimination of prompt time requirements for judicial review. The Department of Public Safety's

---

**8.** The statute did require that "the commission shall give prompt notice of a time and place for such hearing at which the commission will hear such applicant or licensee." *Id.* at 60 n. 8, 99 S.Ct. 2642. But the prompt *notice* of the hearing was held to be insufficient where there was no requirement for a prompt hearing. *Id.* at 65–66, 99 S.Ct. 2642.

**9.** We believe that the language removed from Minn.Stat. § 169A.53, subd. 3, is distinguishable from the language we called "directory" in *Heller v. Wolner,* 269 N.W.2d 31 (Minn. 1978), because of the due process require-

ment of promptness involved in this case. In *Heller,* we concluded that a statutory requirement that a license revocation hearing occur within 30 days from the receipt of a request for a hearing was of a "directory nature" and the district court was not deprived of jurisdiction to hold the revocation hearing after the 30 days had passed. *Id.* at 33. Because the drivers in *Heller* kept their licenses while they waited for their hearing, the delay in the hearing did not cause any prejudice to the drivers. *Id.*

administrative review does not appear to contemplate an evidentiary hearing. The rules do not guarantee that a petitioner can bring witnesses or present testimony. They do authorize the Commissioner to seek additional information, but there are no provisions for subpoenaing or cross-examining witnesses. *See* Minn.Stat. § 169A.53, subd. 1; Minn. R. 7409.4600, subp. 3. Because a successful review may depend on proving the inaccuracy of police reports or lab results, minimal due process requires that the petitioner be given the right to compel witnesses to attend the hearing and to cross-examine persons who prepared these reports. *See, e.g., State v. Richardson,* 670 N.W.2d 267, 277 (Minn. 2003) (stating that due process ensures that a criminal defendant have the right to present the defendant's version of facts through witness testimony); *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (stating that the right of cross-examination helps ensure the accuracy of a trial).

Comparing Minnesota's statute to the Massachusetts statute upheld in *Montrym* further supports our conclusion. Like Minnesota's statute, the Massachusetts statute had two forms of postrevocation review, an immediately available administrative review and judicial review that did not specify any requirement of timeliness. *Heddan,* 336 N.W.2d at 60. When *Heddan* was decided, we said, "[t]he differences between the Massachusetts and Minnesota systems of post-revocation review do not appear to favor either system to any constitutionally significant degree." *Id.*

But, in *Montrym,* the Supreme Court held the immediately available postsuspension administrative hearing available under the Massachusetts statute itself satisfied the due process requirement for prompt postdeprivation review, stating:

> All that Montrym seeks was available to him immediately upon his suspension, and we believe that the "same day" hearing before the Registrar available under § 24(1)(g) provides an appropriately timely opportunity for the licensee to tell his side of the story to the Registrar, to obtain correction of clerical errors, and to seek prompt resolution of any factual disputes he raises as to the accuracy of the officer's report of refusal.

443 U.S. at 15, 99 S.Ct. 2612. Thus, the lack in Massachusetts of prompt judicial review did not affect the due process analysis because the Court held that the administrative review was sufficient for due process requirements. Although the Court did not specifically identify which parts of the Massachusetts administrative hearing were essential to due process, we note that the Court cited language in the Massachusetts statute that provided for an evidentiary hearing and that explicitly authorized the driver to subpoena and cross-examine witnesses. *Id.* at 7 n. 5, 99 S.Ct. 2612.[10] The lack of comparable provisions in Minnesota's Implied Consent Law make the administrative review an inadequate protection of the driver's due process guarantees.

Accordingly, we answer the first certified question in the affirmative.

---

10. The Court cited Massachusetts Gen. Laws Ann., ch. 90, § 24(1)(g) (West 1969), which provided:

> The hearing may be adjourned at the request of the driver or *sua sponte* by the hearing officer in order to permit the attendance of witnesses or for the gathering of relevant evidence. Witnesses at the hearing are subject to cross-examination by the driver or his attorney, and he may appeal an adverse decision of the Registrar to the Board of Appeal pursuant to § 28.

## II.

Having determined that the 2003 amendments eliminate a critical due process element to the Implied Consent Law, we must decide which version of the Implied Consent Law is revived. The Commissioner argues that the proper remedy is to sever only the 2003 amendments and revive the version of the Implied Consent Statute that existed immediately before that amendment. The Commissioner argues that the district court misapplied statutory construction doctrines of severability and revival when it revived the 1980 version of the Implied Consent Law, which did not authorize any prehearing revocation. We agree with the Commissioner.

When a statute is unconstitutional, it is not a law and it is as inoperative as if it had never been enacted. *State v. Mullen*, 577 N.W.2d 505, 512 (Minn. 1998). We have previously held that if a law is unconstitutional, only the latest amendment is severed and any previous version found constitutional remains in full force and effect.[11] *See State v. One Oldsmobile Two–Door Sedan, Model 1946*, 227 Minn. 280, 288, 35 N.W.2d 525, 530 (1948). An unconstitutional law, being void and inoperative, cannot repeal or in any way affect an existing one. *Id.*

Accordingly, we answer the first part of the second certified question in the negative. Our answer to the second part of the second certified question is that the version of the Implied Consent Law that is revived is the version that existed immediately prior to the 2003 amendments.[12] Fedziuk's motion to strike portions of the Commissioner's brief and for fees and costs is denied.

Certified questions answered; motion denied.

---

11. The presumption is that unconstitutional provisions are severable. Minnesota Statutes § 645.20 (2004) provides:
    Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

12. In reviving the pre–2003 Implied Consent Law, we express no opinion on the 2004 amendments to the Implied Consent Law, which, among other changes, lowered the test failure alcohol concentration level from .10 to .08.