STATE OF MINNESOTA

IN SUPREME COURT

A14-2060

Hennepin County

Prentis Cordell Jackson,

Appellant,

vs.

State of Minnesota,

Respondent.

Anderson, J.
Concurring, Stras, J.

Filed: August 3, 2016
Office of Appellate Courts

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The postconviction court did not abuse its discretion by determining that out-of-court statements of an eyewitness lacked the requisite "corroborating circumstances" to be admissible under Minn. R. Evid. 804(b)(3).

2.      The rule announced in *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012), which applies retroactively to appellant who was a juvenile at the time of his

1

offense, was violated when appellant received a mandatory sentence of life imprisonment without the possibility of release.

      3.    A fair and meaningful resentencing hearing for a violation of the *Miller* rule, as applied in *State v. Ali*, 855 N.W.2d 235, 253-55 (Minn. 2014), is not possible here because appellant's sentence was final before the *Miller* rule was announced.  Instead, the remedy applicable in this case is as-applied severance and revival, vacation of appellant's sentence, and remand to the district court for imposition of a sentence of life imprisonment with the possibility of release after 30 years.

      Affirmed in part, reversed in part, and remanded.

      Considered and decided by the court.

O P I N I O N

ANDERSON, Justice.

      This appeal arises from the denial of appellant Prentis Cordell Jackson's petition for postconviction relief.  Jackson's petition raised two primary claims.  First, Jackson claimed that he was entitled to a new trial because an eyewitness recanted his trial testimony.  Second, Jackson claimed that his mandatory sentence of life imprisonment without the possibility of release (LWOR) should be reversed based on *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012).[1]  *Miller* held that mandatory imposition of LWOR sentences is unconstitutional as applied to juveniles under the Eighth

---

[1]    Jackson also raised several state-law claims challenging his sentence under Minn. R. Crim. P. 27.03, subd. 9; Minn. Stat. § 590.01 (2014); and Minn. Stat. § 244.11 (2014). Because we are vacating Jackson's sentence and granting the relief he requests under the Eighth Amendment, we need not and do not address his state-law claims.

Amendment to the United States Constitution. *Miller*, ___ U.S. at ___, 132 S. Ct. at 2464-69. Following an evidentiary hearing, the postconviction court denied Jackson's petition.[2] Jackson appealed to our court. After oral argument but before we released a decision, the United States Supreme Court decided *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016), which holds that the *Miller* rule applies retroactively. In light of *Montgomery*, we ordered supplemental briefing and held a second oral argument.

We affirm in part the denial of postconviction relief because the postconviction court did not abuse its discretion by ruling that an eyewitness's out-of-court statements were not admissible under Minn. R. Evid. 804(b)(3). But we vacate Jackson's LWOR sentence because the mandatory statutory scheme under which this sentence was imposed is unconstitutional as applied to Jackson under the Eighth Amendment, according to *Montgomery*. Because it is not possible to remand for a fair and meaningful *Miller* hearing in retroactive cases, we hold that Minn. Stat. §§ 609.106, subd. 2, 244.05, subds. 4-5 (2014), are severed as applied to Jackson and any other juvenile offenders who received mandatory LWOR sentences that were final before the *Miller* rule was announced, and that the most recent constitutional versions of those statutes are revived. Under the revived statutes that apply to Jackson's conviction of first-degree premeditated murder, we remand to the district court for the imposition of a sentence of life

---

[2] The presentation of evidence occurred on two different dates: November 19 and December 19, 2013. We refer to these two hearings collectively as "the evidentiary hearing" because the bifurcated presentation of evidence does not impact our analysis.

imprisonment with the possibility of release after 30 years, *see* Minn. Stat. §§ 609.106, subd. 2, 244.05, subds. 4-5 (2004).

## I.

The State charged Jackson with first-degree premeditated murder in connection with the shooting death of 15-year-old Michael Anthony Bluntson, Jr. On February 24, 2006, the date of the murder, Jackson was 17 years old. At trial, eyewitness Alfred Lamar testified as follows. He and Jackson were members of the EMB gang (Emerson Money Boys or Emerson Murder Boys). On the date of the murder, Jackson told Lamar that rival gang members had shot a member of the EMB gang and that if he caught one of them he would "F*** them up." Later that day, Jackson and Lamar were in a vehicle with fellow gang members Deshawn Jenkins and Bernard Williams when they saw Bluntson walking on the sidewalk. Someone suggested that Jackson "box" with Bluntson. Jackson responded to the suggestion by stating that he was going to "crush him," at which point the driver stopped the vehicle. As Jackson left the vehicle, he said, "I got something for this n**ger." Jackson then approached Bluntson, and the two of them assumed boxing stances. But instead of throwing a punch, Jackson pulled a gun from his waistband and pointed it at Bluntson. The first time he pulled the trigger, the gun did not fire. When Jackson pulled the trigger a second time, the gun fired, and the bullet hit Bluntson in the face. Bluntson then grasped his face and stumbled.

In addition to Lamar's eyewitness testimony, the State presented the testimony of Jenkins and Williams, which was consistent with Lamar's testimony. The jury found Jackson guilty of first-degree premeditated murder, and the district court sentenced him

4

to LWOR on November 21, 2006. We affirmed Jackson's conviction on April 10, 2008. *State v. Jackson*, 746 N.W.2d 894, 895-98 (Minn. 2008).

On January 11, 2013, Jackson filed a petition for postconviction relief. The postconviction court first considered Jackson's challenge to his conviction based on an alleged recantation by Lamar. Viewing the facts alleged in the petition in the light most favorable to Jackson, the postconviction court concluded that it was required to hold an evidentiary hearing under Minn. Stat. § 590.04, subd. 1 (2014).

During the evidentiary hearing, Lamar asserted his Fifth Amendment right against self-incrimination. In the absence of testimony by Lamar, Jackson attempted to prove Lamar's alleged recantation through Lamar's out-of-court written statements and through testimony by defense investigator Kim Bossert regarding a telephone call with Lamar. Lamar's written statement declared as follows: "[M]y testimony was false. I have no knolledge [sic] about the killing of Anthony Bluntson. I was scared and the investigators basically coached me on what to say. To my knollege [sic] [Jackson] is innocent and played no part in the murder of Anthony that I know of." During the telephone call with investigator Bossert, Lamar purportedly said that (1) his signed statement was true; (2) he had no direct knowledge of who killed Bluntson; (3) he had not seen Jackson on the day in question until after the shooting had occurred; (4) the police had interviewed him "many" times; and (5) he felt pressured to blame Jackson for the shooting because he was young and the police scared him and threatened him with significant prison time.

Jackson argued that Lamar's out-of-court statements were admissible under the hearsay exception for statements against penal interest, Minn. R. Evid. 804(b)(3). Under

5

that rule, hearsay statements made against the "declarant's . . . interest" may be admitted when there are "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement." Minn. R. Evid. 804(b)(3). In an effort to corroborate Lamar's out-of-court statements regarding coaching, pressure, and threats made by police interrogators, Jackson submitted transcripts of the police interviews. Jackson also presented the testimony of investigator Bossert, who described his telephone call with Lamar.

The State presented the testimony of one of the police interrogators, Scott Larson, who testified that the interrogators never threatened Lamar. The State also presented the testimony of an investigator with the Minnesota Department of Corrections, Erin Spruance. As part of her investigation of a witness-tampering scheme, Spruance obtained a 2010 letter that Jackson had sent to Lamonte Martin asking Martin to procure a statement from Lamar.[3] Martin was later convicted of perpetrating a fraud on the court through the creation of false affidavits to obtain postconviction relief.

After hearing all of the evidence, the postconviction court concluded that Lamar's out-of-court statements were not admissible under Rule 804(b)(3) because Jackson had failed to establish corroborating circumstances that clearly indicated the trustworthiness of those statements. Having ruled that Lamar's out-of-court statements were not admissible, the postconviction court rejected Jackson's postconviction challenge to his

---

[3] The letter states: "I need that address that I gave you to call because I need my b**** to send a copy of that affidavit there. I forgot to give you the one I had. I'm trying to get Ghost s***. Then it's a wrap. Hopefully I can get that s*** in the next month or so. That'll be love." Ghost is Lamar's street name.

conviction, explaining that "[t]here is no evidence convincing the Court that the alleged recantation is genuine, or that Lamar lied at trial."

The postconviction court next considered Jackson's challenge to the constitutionality of his sentence. Jackson argued that his mandatory sentence of life imprisonment without the possibility of release violated the Eighth Amendment according to the rule announced in *Miller*, ___ U.S. ___, 132 S. Ct. 2455. The postconviction court concluded that the alleged violation of the *Miller* rule did not entitle Jackson to relief because Jackson's conviction was final before the *Miller* rule was announced. To reach that conclusion, the postconviction court relied on our decisions in *Chambers v. State*, 831 N.W.2d 311, 315 (Minn. 2013), which held that the *Miller* rule did not apply retroactively, and *Roman Nose v. State*, 845 N.W.2d 193, 198-200 (Minn. 2014), which reaffirmed *Chambers*.

After we held oral argument for this case, but before we issued our decision, the United States Supreme Court decided *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016). *Montgomery* holds that the *Miller* rule applies retroactively, and thereby overruled our retroactivity analysis from *Chambers* and *Roman Nose*. In light of *Montgomery*, we ordered supplemental briefing and held a second oral argument.

II.

We first consider Jackson's challenge to his conviction based on the alleged recantation by Lamar. Jackson argues that the postconviction court erred by concluding that Lamar's out-of-court statements were not admissible under the hearsay exception for statements against penal interest, Minn. R. Evid. 804(b)(3). "We review a postconviction

7

court's decision to admit or exclude evidence for an abuse of discretion." *Dobbins v. State*, 845 N.W.2d 148, 152 (Minn. 2013). A postconviction court "abuse[s] its discretion when the postconviction court's 'decision is based on an erroneous view of the law or is against logic and the facts in the record.' " *Miles v. State*, 840 N.W.2d 195, 200 (Minn. 2013) (quoting *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012)).

An out-of-court statement made by a nonparty and offered to prove the truth of the matter asserted is hearsay. Minn. R. Evid. 801(c); *Miles*, 840 N.W.2d at 203. Hearsay is generally inadmissible. Minn. R. Evid. 802; *Dobbins*, 845 N.W.2d at 152. A statement against interest, however, is an exception to the hearsay rule. Minn. R. Evid. 804(b)(3); *Miles*, 840 N.W.2d at 203. Under the statement-against-interest exception, "[a] statement tending to expose the declarant to criminal liability and offered in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Minn. R. Evid. 804(b)(3); *see also State v. Hurd*, 763 N.W.2d 17, 34-35 (Minn. 2009) (explaining that the statement-against-interest exception applies to statements exculpating the accused only when the declaration against interest is proven trustworthy by independent corroborating evidence).

To determine whether the "corroborating circumstances" requirement of Rule 804(b)(3) is satisfied, we have considered the following factors:

> (1) whether other evidence corroborates the facts in the hearsay statement; (2) the extent to which the hearsay statement is consistent with the declarant's prior testimony and other statements; (3) the relationship between the declarant and other witnesses and parties, including the defendant; (4) whether the declarant has reason to fabricate the statement; (5) the overall credibility and character of the declarant; and (6) the timing of the statement.

*State v. Ferguson*, 826 N.W.2d 808, 813 (Minn. 2013). It is not necessary to consider all six of these factors in every case, but the factors "nonetheless serve as guidance for courts when determining whether an exculpatory statement made against a declarant's penal interest is sufficiently trustworthy to be admissible." *Id.* at 814.

After carefully considering the six *Ferguson* factors, the postconviction court determined that Jackson failed to establish corroborating circumstances that clearly indicated the trustworthiness of Lamar's out-of-court statements. The record supports the postconviction court's determination.

With respect to the first factor, the evidence in the record fails to corroborate Lamar's statements regarding coaching, pressure, and threats made by police interrogators. The report from the second police interview demonstrates that Lamar was not pressured because he freely volunteered information. Additionally, Lamar initiated a third contact with police to clarify information he had provided during the second interview. Lamar told police that he was providing the statement "freely and willingly" and "without any threats or promises." Moreover, before investigators concluded the interview, they asked Lamar whether he had anything else to add, at which point Lamar gave a lengthy narrative with additional information about Jackson's actions.

As for the second factor, Lamar's out-of-court statements are not consistent with his prior testimony and the prior testimony of others. In the notarized statement, Lamar claimed to have no direct knowledge of Bluntson's murder. This statement is not only

9

inconsistent with Lamar's trial testimony, it is also inconsistent with the trial testimony of two other witnesses: Deshawn Jenkins and Bernard Williams.

The postconviction court's findings on the third, fourth, fifth, and sixth factors further support the court's determination that Lamar's out-of-court statements are not trustworthy. The court found that Lamar was a fellow gang member who had been convicted of providing false information to police. The court also found that Lamar's hearsay statements could not be considered trustworthy because Jackson attempted to procure them by relying on Martin, "who ha[d] been convicted of perpetrating a fraud on the court in the creation of false affidavits for the purpose of obtaining postconviction relief." The court also found that the statements were made 6 years after Jackson's trial and 2 years after Jackson sent a letter to Martin asking him to procure a statement from Lamar.

In sum, the postconviction court properly applied the law to the facts when it determined that Jackson failed to establish corroborating circumstances that clearly indicated the trustworthiness of Lamar's out-of-court statements. Because the postconviction court's determination is neither based on an erroneous view of the law nor against logic and the facts in the record, we hold that the court did not abuse its discretion when it ruled that Lamar's out-of-court statements were not admissible under Minn. R. Evid. 804(b)(3).

### III.

We next consider Jackson's challenge to the constitutionality of his sentence under the Eighth Amendment to the United States Constitution in light of *Miller v. Alabama*,

___ U.S. ___, 132 S. Ct. 2455 (2012) and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016). Based on Jackson's conviction of first-degree premeditated murder, the district court was required to impose a sentence of LWOR under Minnesota's mandatory sentencing scheme. Minn. Stat. §§ 609.106, subd. 2, 244.05, subds. 4-5 (2014). In *Miller*, the Court held that the mandatory imposition of LWOR sentences is unconstitutional as applied to juveniles. *Miller*, ___ U.S. at ___, 132 S. Ct. at 2464-69; *see Montgomery*, ___ U.S. at ____, 136 S. Ct. at 726.[4]

In *Chambers* and *Roman Nose*, we held that the *Miller* rule did not apply retroactively to juveniles whose LWOR sentences became final before the *Miller* rule was announced. *Roman Nose*, 845 N.W.2d at 199-200; *Chambers*, 831 N.W.2d at 331. *Montgomery*, however, clarifies that the *Miller* rule applies retroactively and overrules our retroactivity analysis from *Roman Nose* and *Chambers*. *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 736. In accordance with *Montgomery*, therefore, the *Miller* rule applies retroactively to juveniles such as Jackson, whose LWOR sentences became final before the *Miller* rule was announced. To the extent that our decisions in *Roman Nose* and *Chambers* are inconsistent with our holding today, those decisions are overruled.

Having concluded that Jackson is entitled to retroactive application of the *Miller* rule, we next determine whether the *Miller* rule was violated here. It is undisputed that the district court imposed a mandatory sentence of LWOR and did not consider Jackson's

---

[4]     The *Miller* decision, which established that mandatory LWOR sentencing statutes are unconstitutional as applied to juveniles, was issued over four years ago, on June 25, 2012. Since then, various reform bills have been introduced in the Minnesota Legislature in response to *Miller*, but no legislation has been passed to date.

11

youth-related factors, whether Jackson fell within the vast majority of juvenile offenders whose crimes reflect "transient immaturity," or whether Jackson was one of the "rare" juveniles whose crimes reflect "irreparable corruption" or "permanent incorrigibility," according to *Miller*, ___ U.S. at ___, 132 S. Ct. at 2464-75, and *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 734. Consequently, we conclude that Jackson's sentence violates the Eighth Amendment under the *Miller* rule.

IV.

We next consider the appropriate remedy for the constitutional violation in Jackson's case. In *State v. Ali*, after holding that a juvenile's LWOR sentence violated the *Miller* rule, we considered two remedies:[5] (1) remanding for a *Miller* resentencing hearing (the *Chauvin* remedy) or (2) severing the unconstitutional portion of the mandatory sentencing statutes and reviving the most recent constitutional versions (the *Fedziuk* remedy). *State v. Ali*, 855 N.W.2d 235, 253-55 (Minn. 2014) (citing *State v. Chauvin*, 723 N.W.2d 20 (Minn. 2006); *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340 (Minn. 2005)). Under the circumstances in *Ali*, and without the benefit of *Montgomery*, we determined that the more appropriate remedy for the constitutional violation in that case was to remand for a *Miller* resentencing hearing. *Ali*, 855 N.W.2d at 255-56 ("The remedy we sanctioned in *Chauvin* provides a better fit for the circumstances presented here than the remedy we used in *Fedziuk*.").

---

[5]     Our *Ali* decision, which was issued before *Montgomery*, did not involve a retroactive application of *Miller*. We held that the *Miller* rule applied in that case because the appellant's conviction was not final before the *Miller* rule was announced. *See State v. Ali*, 855 N.W.2d 235, 253 (Minn. 2014).

12

Jackson urges us to reconsider our decision in *Ali* to allow district courts to hold *Miller* hearings because *Ali* was premised on applying *Miller* as a rule of criminal procedure. We concluded in *Ali* that district courts had the authority to hold *Miller* hearings because the sentencing scheme violated a "rule of constitutional criminal procedure." *Id.* at 256. Jackson argues that our reasoning in *Ali* is undermined by the holding in *Montgomery* that "*Miller* announced a *substantive* rule of constitutional law." *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 734 (emphasis added). Thus, Jackson argues that *Montgomery* raises separation-of-powers concerns regarding the authority of courts to hold *Miller* hearings in the absence of legislative direction. Jackson concludes that the judiciary should not be permitted to fashion a response to a constitutionally mandated substantive change in the law. *See State v. Lemmer*, 736 N.W.2d 650, 657 (Minn. 2007) ("The judicial branch governs procedural matters, while the creation of substantive law is a legislative function.").

The State responds that overruling *Ali* is unwarranted, and that this question is more complicated than Jackson would have it, because the *Miller* rule is both substantive and procedural. As the State explains, the *Miller* rule is not purely substantive because it does not categorically prohibit LWOR sentences for all juveniles. Rather, it is a rule that prohibits LWOR sentences for juveniles whose crimes reflect "transient immaturity" but allows LWOR sentences for the rare class of juveniles whose crimes reflect "irreparable corruption" or "permanent incorrigibility." *See Miller*, ___ U.S. at ___, 132 S. Ct. at 2464-75; *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 734. Thus, the State argues, the rule articulated in *Miller* and later refined in *Montgomery* is a substantive rule with a

13

procedural element—the *Miller* hearing—at which youthful characteristics are considered and evidence is evaluated to determine whether the juvenile falls within the transiently immature class or the irreparably corrupt class. *See Montgomery*, ___ U.S. at ____, 136 S. Ct. at 734-35 ("To be sure, *Miller*'s holding has a procedural component . . . . The [*Miller*] hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity."). Therefore, the State concludes, it is within the authority of courts to order a *Miller* hearing as a procedural remedy for violations of the *Miller* rule.

Although one of the premises for allowing a *Miller* hearing in *Ali* has been significantly undermined by *Montgomery*, we need not decide now whether *Ali* has any continuing viability. A *Miller*-hearing remedy provides inadequate relief in a retroactive context for a juvenile such as Jackson, whose sentence was imposed nearly 10 years ago. Based on the significant passage of time since Jackson's 2006 sentencing, holding a fair and meaningful *Miller* hearing is not possible. For example, no presentencing investigation was conducted following his conviction. Similarly, no record of Jackson's youthful characteristics was made at the time of the 2006 sentencing. The significant passage of time creates a barrier to presenting evidence and witnesses that would allow a meaningful *Miller* hearing. A fair and meaningful evaluation of a juvenile's youthful characteristics, including his or her "transient immaturity" versus permanent "corruption" and "incorrigibility" at the time of the offense is not possible in cases involving a retroactive application of the *Miller* rule. The sentencing court would be required to evaluate a juvenile's mindset and characteristics from many years ago. With limited

14

relevant evidence available, such a remedy would result in a significant risk of an unfair hearing.

We therefore turn to another option for relief. Under the *Fedziuk* severance remedy, a facially unconstitutional amendment to a statute may be severed and the most recent constitutional version of the statute revived. *Fedziuk*, 696 N.W.2d at 349 ("[I]f a law is unconstitutional, only the latest amendment is severed and any previous version found constitutional remains in full force and effect."); *see also* Minn. Stat. § 645.20 (2014) ("[T]he provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid . . . ."). In *Ali*, we declined to apply *Fedziuk* severance, concluding that the "*Chauvin* [remedy] provide[d] a better fit" and that the *Fedziuk* remedy "swe[pt] too broadly." *Ali*, 855 N.W.2d at 255-56, 255 n.19. We held that the *Fedziuk* remedy was overly broad because it would have severed the relevant LWOR provisions for everyone, both adults and juveniles, even though such provisions are not facially unconstitutional; rather, the mandatory imposition of LWOR sentences is constitutional for adults. *See id.*

Therefore, rather than the overly broad facial severance we applied in *Fedziuk*, here we consider a narrower approach: as-applied severance. *See, e.g.*, *Whiteside v. State*, 426 S.W.3d 917, 920-21 (Ark. 2013) (severing as applied to juveniles statutory language that required a sentence of life imprisonment without parole); *Jackson v. Norris*, 426 S.W.3d 906, 910 (Ark. 2013) ("[W]e hold that severing that language from the capital-murder statute cures the constitutional infirmities when the statute is applied to juveniles . . . ."); *see also* Kevin C. Walsh, *Partial Unconstitutionality*, 85 N.Y.U. L. Rev.

15

738, 746-47 (2010) ("[I]f the statute has unconstitutional applications, they are severable from the constitutional applications." (quoting Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 249 (1994))).[6] Under as-applied severance,[7] a statutory provision is severed only as applied to a certain class of persons to prevent unconstitutional applications. In place of the severed statutes, the most recent constitutional versions are revived, consistent with the revival portion of the *Fedziuk* remedy.

Here, because a fair and meaningful *Miller* hearing under *Ali/Chauvin* is not possible, and because facial severance is overly broad, we conclude that the most appropriate remedy is as-applied severance and revival. Under this remedy, the relevant LWOR sentencing statutes are severed and the most recent constitutional statutes are revived, as applied to Jackson and any other juvenile offenders who received mandatory LWOR sentences that were final before the *Miller* rule was announced. For Jackson, who was convicted of first-degree premeditated murder, Minn. Stat. § 609.185(a)(1)

---

[6] The Walsh article further explains that "a statute that has unconstitutional applications cannot be constitutionally applied to anyone . . . unless the court can sever the unconstitutional applications of the statute from the constitutionally permitted ones." Walsh, *supra* at 748 (quoting Dorf, *supra* at 238).

[7] Similar remedies of as-applied severance and revival, or partial severance, were advocated by the dissenting opinions in our *Ali* decision. *See* 855 N.W.2d at 265 (Page, J., dissenting) ("Nothing prevents the court from reviving the 2004 statute [Minn. Stat. § 609.106 (2004)] only to the extent it applies to juvenile offenders."); *see also id.* at 269 (Stras, J., dissenting) ("Whether phrased in terms of statutory revival or severance . . . the remedy is the same: we must declare the heinous-crimes statute [Minn. Stat. § 609.106 (2014)] unconstitutional as applied to Ali and remand the case to the district court with instructions to impose a sentence of life with the possibility of release.").

(2014), the most recent constitutional versions of the relevant sentencing statutes are from the year 2004. *See* Minn. Stat. §§ 609.106, subd. 2, 244.05, subds. 4-5 (2004).[8]

## V.

We affirm in part the denial of Jackson's petition for postconviction relief. We affirm the denial of Jackson's challenge to his conviction based on the alleged recantation by Lamar. The postconviction court did not abuse its discretion when it ruled that Lamar's out-of-court statements were not admissible under Minn. R. Evid. 804(b)(3). However, for the above reasons, we conclude that Jackson's mandatory LWOR sentence violated the Eighth Amendment under the *Miller* rule; that it is not possible to remand for a fair and meaningful *Miller* hearing; and that the most appropriate remedy for the constitutional violation in this case is as-applied severance and revival. We hold that Minn. Stat. §§ 609.106, subd. 2, 244.05, subds. 4-5 (2014), are severed as applied to Jackson and any juvenile offenders who received mandatory LWOR sentences that were

---

[8] The supervised release described by these provisions is permissive, not required. Under the current statutory scheme, before supervised release is authorized, a community investigation report is prepared. *See* Minn. Stat. § 244.05, subd. 5(b) (2014). The report includes the views of the victim's family, the sentencing judge, the prosecutor, and law enforcement personnel involved in the case. *Id.* The report is evaluated by an advisory panel of corrections specialists to consider the inmate's case history, including the facts and circumstances of the offense, past criminal history, institutional adjustment, program team reports, psychological and psychiatric reports, and the results of community investigations. Minn. R. 2940.1800, subp. 2 (2015).

The *Montgomery* Court noted that "[a] state may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. . . . Those prisoners who have shown an inability to reform will continue to serve life sentences." ___ U.S. ___, 136 S. Ct. at 736. Although Minnesota does not have a "parole" system, our current system of supervised release is similar in some respects.

final before the *Miller* rule was announced. The most recent constitutional versions of those statutes are revived. Based on Jackson's conviction of first-degree premeditated murder, the revived statutes require a sentence of life imprisonment with the possibility of release after 30 years, Minn. Stat. §§ 609.106, subd. 2, 244.05, subds. 4-5 (2004). Therefore, we vacate Jackson's LWOR sentence and remand to the district court for imposition of a sentence of life imprisonment with the possibility of release after 30 years.

Affirmed in part, reversed in part, and remanded.

STRAS, Justice (concurring).

In accordance with my dissenting opinion in *State v. Ali*, 855 N.W.2d 235, 267 (Minn. 2014), I agree with the court that Jackson is entitled to be resentenced to a term of life imprisonment with the possibility of release. Based on my dissent in *Ali*, however, I cannot fully join the court's opinion because I believe that every juvenile offender facing a mandatory term of life imprisonment is entitled to such a remedy and that partial severance, not revival, fully resolves the constitutional defects in Minnesota's current first-degree murder statutes. *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 314-26 (2005) (Thomas, J., dissenting in part) (discussing partial severance). Accordingly, I concur only in the judgment of the court.