THISSEN, Justice.
In 2005, a jury found appellant Keith Hapana Crow (Crow) guilty of aiding and *7 abetting the first-degree felony murder of Robert Berry, Jr. (Berry). On direct appeal, we affirmed Crow's conviction. State v. Crow , 730 N.W.2d 272 (Minn. 2007). Over the next six years-in 2008, 2009, and 2013-Crow filed three petitions for postconviction relief. Each was summarily denied by a postconviction court. On August 18, 2017, Crow filed the present petition for postconviction relief-his fourth overall-which was also summarily denied by the postconviction court without an evidentiary hearing. Because the record conclusively establishes that Crow is not entitled to relief, we affirm.
FACTS
On the evening of September 23, 2004, Crow arranged and attended a party at a friend's residence in Morton.[1] Among the guests who attended the party was Berry. Due to tension between Berry and another guest, J.P., a fight broke out during which Crow physically attacked Berry and knocked him unconscious. Later that evening, Crow-along with other guests at the party including J.P.-wrapped the still-unconscious Berry in a blanket and drove to the Minnesota River. At the river, someone stabbed Berry fifteen times, after which his body was dumped into the river. Crow fled the state but was later arrested in Montana and returned to Minnesota.
A jury found Crow guilty of aiding and abetting first-degree felony murder while committing a kidnapping, Minn. Stat. § 609.185(a)(3) (2018), and aiding and abetting second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2018). The district court entered judgment on the first-degree murder conviction and imposed the mandatory life sentence without the possibility of release. See Minn. Stat. § 609.106, subd. 2(2) (2018). We affirmed Crow's conviction on direct appeal, rejecting his claims of double jeopardy violations, inadmissible expert testimony, insufficient evidence, unconstitutional sentencing, prosecutorial misconduct, and judicial bias. See Crow , 730 N.W.2d at 272.
Crow filed his first petition for postconviction relief on July 14, 2008, arguing ineffective assistance of counsel and prosecutorial misconduct. The postconviction court summarily denied this petition, concluding that even if Crow's allegations were true, his counsel's performance did not fall below standards of reasonableness and there was no reasonable probability that the outcome of Crow's trial would have been different. Regarding the alleged prosecutorial misconduct, the postconviction court held that such a claim was either raised during direct appeal, or was known or knowable to Crow but not raised, and consequently was procedurally barred. Crow did not appeal the denial of his first postconviction petition.
Crow filed his second postconviction petition on January 6, 2009, arguing that Minn. Stat. § 590.05 (2018) unconstitutionally denied him appointed counsel and meaningful access to the courts in his prior postconviction proceeding. The postconviction court summarily denied Crow's second petition, holding that his right to counsel was satisfied by the representation he received on direct appeal. The postconviction court also concluded that Crow's assertion that he was unable to access the courts lacked factual support because Crow had actually succeeded in filing his prior petition. Crow failed to file a timely appeal from the denial of his second postconviction petition. See Crow v. State , No. A11-0299, Order (Minn. filed Feb. 18, 2011).
*8 Crow filed his third postconviction petition on March 11, 2013, arguing that he was entitled to relief because (1) newly discovered evidence in the form of an affidavit from J.P., another participant in the murder, asserted that Crow was not actively involved in the murder; (2) newly discovered evidence of an email from a juror expressed doubts about the justness of the verdict; and (3) based on the location of the residence where Crow and Berry initially fought, Crow's trial took place in the wrong venue. The postconviction court summarily denied the petition. The court ruled that J.P.'s affidavit was not newly discovered evidence because it was known or knowable to Crow or his counsel at the time of trial and on direct appeal. The court noted that the juror email was dated November 28, 2007, and, therefore, the claim was barred because Crow knew or should have known of the email's existence before his first postconviction petition in July 2008. Finally, the court concluded that the improper-venue claim was procedurally barred because Crow knew or should have known that the venue was improper when he filed his direct appeal or prior petitions. Crow did not appeal the denial of his third postconviction petition.
In this appeal, we consider Crow's fourth postconviction petition. Crow raises several grounds for relief. First, Crow expresses frustration that the sentence of his codefendant, J.P., who was a minor when the crime occurred, was recently reduced from life in prison without the possibility of release to life in prison with the possibility of release in accordance with Jackson v. State , 883 N.W.2d 272 (Minn. 2016). Crow, who was 22 on the date of the crime, argues that his sentence should be similarly reduced. Crow also argues that he should receive a sentence similar to that of J.P. because, as an "aider and abettor," he is either less, or at most only equally, culpable for the crime. Crow further contends that Minn. Stat. § 609.185[2] -the first-degree murder statute-is unconstitutional as applied to him. In addition, Crow asserts that Minn. Stat. § 590.01 (2018)-setting forth the rules governing postconviction petitions-is unconstitutional because it denied him postconviction legal counsel. Crow contends that his counsel was ineffective at trial and on appeal. Finally, Crow alleges that his mental health conditions excuse his failure to follow the statutory two-year postconviction time restraints set forth in Minn. Stat. § 590.01.
On November 6, 2017, the postconviction court summarily denied Crow's fourth postconviction petition without an evidentiary hearing. Concerning Crow's contention that he should be resentenced like his co-defendant, the postconviction court noted that J.P.'s resentencing was required by our decision in Jackson , which followed the United States Supreme Court's decisions in Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). Those cases held that the Eighth Amendment prohibits imposing automatic sentences of life without the possibility of release on juveniles convicted of murder. Miller , 567 U.S. at 465, 132 S.Ct. 2455 ; Montgomery , --- U.S. ----, 136 S.Ct. at 736 (holding that Miller applies retroactively). Because Crow was not a minor when Berry was murdered, the postconviction court held that Crow was not entitled to resentencing and that his life sentence without the possibility of release was constitutional under the precedent of this *9 court and the Supreme Court of the United States.
The postconviction court decided that each of Crow's remaining claims repeated claims raised, argued, and decided either in his direct appeal or in one of his previous postconviction petitions. Consequently, the court held that those claims were barred by the rule set forth in State v. Knaffla , 309 Minn. 246, 243 N.W.2d 737, 741 (1976). Finally, the postconviction court rejected Crow's claim that mental health issues impeded his filing of postconviction petitions in a timely manner. The court noted that Crow had successfully submitted several prior postconviction petitions. The postconviction court also held that if Crow were arguing that his mental health was impaired at the time of trial-and not "as a deficiency or an excuse for failing to submit a timely post-conviction petition"-then his claim was Knaffla -barred because it was known, or knowable, at the time of his direct appeal and his first postconviction petition.
Pursuant to Minn. Stat. § 590.06 (2018), Crow appealed.
ANALYSIS
We review a postconviction court's summary denial of a petition for postconviction relief for an abuse of discretion. Andersen v. State , 913 N.W.2d 417, 422 (Minn. 2018). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record," or exercises its discretion in an arbitrary or capricious manner. Id. (quoting Brown v. State , 895 N.W.2d 612, 617 (Minn. 2017) ); Zornes v. State , 903 N.W.2d 411, 416 (Minn. 2017).
Minnesota's postconviction statute authorizes a person who claims that his conviction or his sentence violated his constitutional or legal rights to commence a proceeding "to secure relief by filing a petition in the district court in the county in which the conviction was had...." Minn. Stat. § 590.01, subd. 1(1). We "liberally construe the petition and any amendments thereto," including where the petitioner is self-represented, and "look to the substance [of the petition] and waive any irregularities or defects in form." Minn. Stat. § 590.03 (2018) ; see Fox v. State , 913 N.W.2d 429, 433 (Minn. 2018) ("We construe Fox's petition liberally, as we do generally with pro se petitions").
"A petition for postconviction relief filed after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." Minn. Stat. § 590.01, subd. 1. We have held that "when a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred." Davis v. State , 880 N.W.2d 373, 377 (Minn. 2016) (quoting Buckingham v. State , 799 N.W.2d 229, 231 (Minn. 2011) ). This rule is known as the Knaffla -bar in light of its origin in Knaffla , 243 N.W.2d at 741. Additionally, "if [a petitioner's] claim could have been raised in a previous postconviction petition, the Knaffla rule bars consideration of the claim in a subsequent petition for postconviction relief." Pearson v. State , 891 N.W.2d 590, 597 (Minn. 2017).
Knaffla 's procedural bar on claims that were known or knowable to a petitioner on direct appeal or during a prior postconviction proceeding is subject to two exceptions. First, if an issue is "so novel that its legal basis was not reasonably available at the time of the direct appeal," it may still be heard. Quick v. State , 757 N.W.2d 278, 280 (Minn. 2008). Second, if a court *10 decides that hearing the claim is "in the interest of justice [because] fairness so requires and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal," the claim may also be heard. Id .[3]
The person seeking postconviction relief bears the burden of establishing by a preponderance of the evidence that his claims merit relief. Hannon v. State , 889 N.W.2d 789, 792 (Minn. 2017). "A postconviction court must hold an evidentiary hearing on the postconviction petition '[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief.' " Taylor v. State , 910 N.W.2d 35, 38 (Minn. 2018) (alteration in original) (quoting Minn. Stat. 590.04, subd. 1 (2018) ). "In determining whether an evidentiary hearing is required, a postconviction court must consider the facts alleged in the petition in the light most favorable to the petitioner." Id. An evidentiary hearing is not required, however, "if the facts alleged in the petition ... establish that the petition is procedurally barred by the rule announced in Knaffla " or when the claims are based solely on "conclusory, argumentative assertions without factual support." Id. (citations omitted); Davis v. State , 784 N.W.2d 387, 391 (Minn. 2010).
I.
Crow argues that the resentencing of his co-defendant, J.P., requires that Crow also be resentenced. Crow's argument fails as a matter of law.
On September 24, 2004, the date of Berry's murder, J.P. was a juvenile (age 16), while Crow was an adult (age 22). For his role in the murder of Berry, J.P. initially received the same sentence as Crow: life without the possibility of release. The Supreme Court of the United States subsequently held that the imposition of a mandatory term of life in prison without the possibility of release "for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " Miller , 567 U.S. at 465, 132 S.Ct. 2455. In 2016, the Supreme Court held that Miller applies retroactively to those juveniles-such as J.P.-who had already received such a sentence. Montgomery , --- U.S. ----, 136 S.Ct. at 736.
In Jackson , we held that "the most appropriate remedy [in light of Montgomery and Miller ] is as-applied severance" of the unconstitutional application of automatic-life-without-parole sentencing to juvenile offenders sentenced before Miller and "revival" of the prior version of the sentencing statute in effect on the date of the juvenile's conviction. 883 N.W.2d at 281. Because J.P. was only 16 at the time of Berry's murder, his sentence of life without the possibility of release was unconstitutional. Accordingly, he was resentenced to life with the possibility of parole.
Because Crow was not a juvenile at the time of Berry's murder, Miller 's rule regarding *11 the unconstitutionality of life without the possibility of release sentences for juveniles does not apply to him. See Munt v. State , 880 N.W.2d 379, 383 (Minn. 2016) ("The Supreme Court's holding in Miller is plainly limited to juvenile offenders and does not apply to [appellant], who was 35 years old at the time he committed the murder and kidnappings"); see also State v. Robertson , 884 N.W.2d 864, 877 (Minn. 2016) (holding that Miller does not apply to a 22-year old defendant).
Crow also asserts that the differential between his sentence and J.P.'s sentence violates the Equal Protection Clause. This argument lacks merit. In Munt , we rejected that same argument and held that, for sentencing, juveniles and adults are not similarly situated for purposes of the Equal Protection Clause. 880 N.W.2d at 383. Consequently, the legal basis behind J.P.'s resentencing has no impact on Crow's own sentence to life without the possibility of release, and therefore the postconviction court did not abuse its discretion by summarily denying that claim.
II.
Crow also argues that his life circumstances and comparable culpability to J.P. require that his sentence be modified to match J.P.'s modified sentence. Specifically, Crow contends that both he and J.P. suffered from a lack of maturity at the time of the murder and that both had fathers who were incarcerated and mothers who suffered from addiction. Those similarities, Crow states, require that he too be resentenced to life with the possibility of release. Additionally, Crow argues that his role as an aider and abettor (but not the principal) in Berry's murder, paired with his postconviction rehabilitation and conduct, require mitigation of his sentence. Finally, Crow argues that because his sentence is so much longer than J.P.'s sentence, his sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment.
The postconviction court did not abuse its discretion by rejecting Crow's claims arising from life circumstances and comparable culpability. As an initial matter, the Legislature has defined first-degree murder in the course of kidnapping as a "heinous crime" subject to a mandatory sentence of life without the possibility of release. Minn. Stat. § 609.106, subd. 2(2). We have consistently upheld sentences of life without the possibility of release for adult offenders convicted of felony murder. See State v. Heden , 719 N.W.2d 689, 698 (Minn. 2006) (affirming life without possibility of release sentence for first-degree murder while committing or attempting to commit criminal sexual conduct); State v. Gutierrez , 667 N.W.2d 426, 438-39 (Minn. 2003) (affirming sentence of life without the possibility of release for first-degree felony murder, and noting that an appellant arguing that such a sentence is unconstitutional as applied to him would have to show that "our culture and laws emphatically and well nigh universally reject" such a sentence (internal quotation marks omitted) (citation omitted)).
Further, in deciding Crow's direct appeal, we held that his sentence was both commensurate with his culpability and fair in comparison with his involvement in Barry's murder. Crow , 730 N.W.2d at 281. Specifically, we noted that "the punishment for both first-degree premeditated murder and first-degree murder committed during a kidnapping [of which Crow was convicted] is now commensurate and we have already determined that the evidence was sufficient to support the conviction for which he was sentenced." Id . J.P.'s resentencing did not call into question the constitutionality of the heinous-crimes statute or our prior precedent except to *12 the extent that an automatic sentence of life without the possibility of release is cruel and unusual punishment when applied to juveniles.
The similarities in Crow's and J.P.'s life circumstances and family background do not change this conclusion. Again, Crow and J.P. were initially given the same sentence. It was only J.P.'s age at the time of the crime that made a constitutional difference and required a reduced sentence for J.P. Similarly, Crow's good behavior while in prison and his efforts to gain an education and career skills-while commendable-are not an independent legal basis for resentencing.[4]
Crow also broadly asserts that despite his age at the time of the crime, he was just as immature as J.P., and he should therefore be resentenced. Crow vaguely refers to a report from the National Institutes of Health, which concludes that, based on a review of scientific studies, the development and maturation of the brain occurs primarily during adolescence and is not fully accomplished until the age of 25 years.[5] Crow, however, introduced no evidence demonstrating that his individual developmental state at the time of the murder was equivalent to that of J.P. or a generic juvenile.
In addition, Crow argues that he is less culpable than J.P.-and so entitled to a reduced sentence-because he was convicted as an aider and abettor to first-degree murder in the course of a kidnapping rather than as the principal actor. That argument is to no avail. "[A] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2018) ; see State v. Campbell , 367 N.W.2d 454, 461 (Minn. 1985) ("[A]s a participant [the defendant is] legally responsible for [the principal's] actions under Minn. Stat. § 609.05.").
Finally, for the same reasons stated above, Crow's argument that J.P.'s reduced sentences renders Crow's sentence of life without the possibility of release cruel and unusual also fails as a matter of law.
III.
Crow next claims that the jury instructions at his trial relieved the state of its burden of proof on some elements of a crime, citing State v. Mahkuk , 736 N.W.2d 675, 682-83 (Minn. 2007).[6] Crow does not identify any particular jury instruction or explain what it was about the jury instructions that relieved the state of *13 its burden of proof on the elements of the crimes for which he was convicted. Further, the postconviction court that denied Crow's first petition for postconviction relief observed that the district court judge that presided at Crow's murder trial "virtually uniformly instructed the jury in line with the model instructions." Our review of the record confirms that the district court properly instructed the jury that, to find Crow guilty, the jury was required to find that each element of each crime had been proven beyond a reasonable doubt.[7]
Because we construe postconviction petitions and appeals liberally, Minn. Stat. § 590.01, subd. 1(1), we also consider whether Crow is making a different claim: that the district court erred by failing to instruct the jury on the potential sentence that Crow faced if convicted. In his argument about the jury instructions, Crow refers to an email from a juror sent months after the verdict stating that the juror would not have found Crow guilty had she known that his sentence would be life without the possibility of release.[8] We have long held, however, that "[t]he jury go[es] outside their province as triers of the facts if they include the matter of punishment in their deliberations." State v. Finley , 214 Minn. 228, 8 N.W.2d 217, 218 (1943) ; see State v. Chambers , 589 N.W.2d 466, 474 (Minn. 1999).[9] The postconviction court did not abuse its discretion by denying Crow's jury instruction claim.
IV.
Crow also argues that Minnesota's postconviction relief statute, Minn. Stat. § 590.01, is unconstitutional as applied to him because it denied him appointed counsel to assist him in his postconviction petitions. He further argues that having the same counsel on appeal while asserting a claim of ineffective assistance of counsel is contradictory and unfair.
The postconviction court properly concluded that this claim is procedurally barred. In his second petition for postconviction relief, Crow argued that Minn. Stat. § 590.05 (the portion of the postconviction statute that discusses the right to counsel) was unconstitutional as applied to him because it denied him the right to a lawyer in postconviction proceedings. The postconviction court deciding Crow's second postconviction petition rejected that argument, explaining that because Crow "had the assistance of counsel in his direct appeal," he had no right to counsel to assist with his postconviction claims. The same postconviction court also expressly rejected Crow's contention that having the same trial and appellate counsel was presumptively unfair. Crow did not timely appeal the second postconviction court's decision. Consequently, Crow's attempt to raise these claims again here is barred by Minn. Stat. § 590.04, subd. 3 (explaining that "a second or successive petition for similar *14 relief on behalf of the same petitioner" may be summarily denied), as well as by Knaffla . See Davis , 880 N.W.2d at 377 ; see also Pearson , 891 N.W.2d at 597.
V.
We now turn to Crow's argument that his counsel at trial and on appeal was ineffective. The United States and Minnesota Constitutions guarantee a criminal defendant the right to effective assistance of counsel. See U.S. Const. amend. VI ; Minn. Const. art. I, § 6 ; see also Strickland v. Washington , 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; State v. Vance , 254 N.W.2d 353, 358 (Minn. 1977).
To prevail on an ineffective assistance of counsel claim, appellant must show both that (1) his trial counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. State v. Hokanson , 821 N.W.2d 340, 357 (Minn. 2012) (internal citations omitted). The objective standard of reasonableness "is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." Id. at 358 (internal quotation marks omitted) (citation omitted). In evaluating claims of ineffective assistance of counsel, there is a "strong presumption that counsel's performance was reasonable and this court does not review matters of trial strategy or the particular tactics used by counsel." Id.
In this fourth postconviction petition, Crow makes several claims of ineffective assistance of counsel.[10] We address each in turn.
Crow first argues that his lawyer should have made a motion under Minn. R. Crim. P. 17.06, subd. 2 (2009), objecting to his indictment because he was "classically overcharged" as both "principal" and "aider and abettor." Even if this were a legitimate ground to attack an indictment, Crow's claim is procedurally barred. Crow knew that his lawyer did not object to the indictment when he filed his direct appeal or any of his previous postconviction petitions. The postconviction court did not abuse its discretion when it concluded that this claim of ineffective assistance of counsel is barred under Knaffla .
Crow next contends that the prosecutors offered his trial lawyer the following plea deal: Crow's sentence would be limited to 30 years in exchange for a guilty plea. Crow further claims that his trial lawyer rejected the plea offer without consulting Crow. Crow, however, offers no evidence aside from his own assertions that such a deal was ever offered. In addition, Crow does not state when he first learned about the purported plea offer. A *15 postconviction court properly rejects ineffective assistance claims when based solely on "conclusory, argumentative assertions without factual support." Davis , 784 N.W.2d at 391. In the absence of any substantive evidence to support his claims about the plea deal, the postconviction court did not abuse its discretion by rejecting this ineffective assistance of counsel claim.
Crow also claims that his trial lawyer should have hired a better, more effective investigator. Crow does not point to any evidence, however, that a different investigator might have found anything that would have made a difference in his case or otherwise allege sufficient facts to support the conclusion that the investigator was deficient or that he was prejudiced by any alleged deficiency. Cf. Fox , 913 N.W.2d at 436 (requiring the defendant to "allege sufficient facts to conclude what occurred (or did not occur) [and] that he was prejudiced by the alleged failure"). Further, Crow knew or should have known that the investigator was deficient when he filed a direct appeal or, at the very latest, when he filed his previous postconviction petition in 2008.[11] Therefore, the postconviction court did not abuse its discretion when it concluded that this claim is barred under Knaffla.
Crow claims that his trial counsel was ineffective because she failed to request a jury instruction for kidnapping or on the defense of intoxication, or to object when the jury asked to re-listen to the tapes of Crow's jailhouse calls. But Crow knew that his lawyer did not request kidnapping or intoxication instructions when he filed his direct appeal and his previous postconviction petitions. Crow also knew when he filed his direct appeal that his lawyer did not object when the jury asked to re-listen to the jailhouse tapes. Therefore, the postconviction court did not abuse its discretion when it concluded that these claims are barred under Knaffla.
Crow further asserts that his trial counsel should have requested a Rule 20[12] competency evaluation prior to trial. In support of this claim, Crow avers that he had a "long history of mental health defects and medication leading up to his trial." He offers no additional evidence, however, describing his pretrial mental health defects and medication. Moreover, the evidence Crow does offer about the state of his mental health while in prison is too conclusory to support his claim of ineffective assistance of counsel.[13] Davis , 784 N.W.2d at 391. Crow also states that "he was so sedated [at trial that] he could not participate in his own defense" and offers *16 as evidence that he was unable to participate in a "staged outburst" at trial. Those facts, however, were plainly known by Crow and his counsel when he filed his direct appeal and all of his previous postconviction petitions. The argument is foreclosed by Knaffla .
Crow also claims that his trial counsel should have demanded a speedy trial. See State v. Osorio , 891 N.W.2d 620, 627-28 (Minn. 2017) (setting forth the test for assessing speedy trial claims).[14] Crow's allegations to support his claim are conclusory and argumentative. Indeed, Crow does not claim that he asserted his right to a speedy trial, and our review of the record discloses that Crow's counsel stated in court on February 14, 2005, that Crow was not making a demand for a speedy trial and provided reasons for that decision. In addition, Crow's only claim of prejudice resulting from the delay is that his trial did not start until after August 1, 2005. That delayed start meant that changes to the postconviction statute enacted by the Legislature that became effective on August 1, 2005 (changes that Crow deems detrimental to his rights) applied to his case. But that change-adding a provision that "a petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence"-did not prejudice Crow because our Knaffla precedent already reflected that legal principle even before Berry's murder. Act of June 2, 2005, ch. 136, art. 14, § 12, 2005 Minn. Laws 1097, 1097 (codified as amended at Minn. Stat. § 590. 01, subd. 1 (2006)); see King v. State , 649 N.W.2d 149, 156 (Minn. 2002) ("Once a defendant directly appeals a conviction, all matters raised in that appeal or known at the time of appeal will not be considered by a postconviction court in a subsequent petition for relief."). Crow also knew about his potential speedy trial claim when he filed his direct appeal or his previous postconviction petitions. The postconviction court did not abuse its discretion when it concluded that this claim of ineffective assistance of counsel is barred under Knaffla.[15]
Finally, Crow claims that his lawyer provided ineffective assistance of counsel on appeal because she did not raise any of the issues raised above on appeal. Appellate counsel has no duty to raise all possible issues on appeal and may exclude those that detract from more meritorious issues. Hummel v. State , 617 N.W.2d 561, 566 (Minn. 2000). Further, we have determined that the allegations underlying Crow's claim of ineffective assistance *17 of trial counsel either lack substantive merit or were known or should have been known to Crow when he filed one of his three previous postconviction petitions. For the same reasons, the trial court did not abuse its discretion by denying Crow's claim of ineffective assistance of appellate counsel. Id .
VI.
We also address Crow's argument that the court should ignore the statutory 2-year time bar set forth in Minn. Stat. § 590.01, subd. 4(a), because Crow suffered from a "mental disease." See Minn. Stat. § 590.01, subd. 4(b)(1). The argument is inapposite because the State forfeited reliance on the statutory 2-year time bar set forth in Minn. Stat. § 590.01, subd. 4(a), and we do not rely on the time-bar to reject Crow's claims. Like the postconviction court, we deny Crow's claims either on their substantive merits or because the claims are barred under Knaffla . In any event, Crow's assertion that he suffered from a "mental disease" that kept him from asserting claims for postconviction relief is highly conclusory. He fails to identify when he suffered from such mental disease except for brief snapshots in 2013 and 2016, and even then he fails to identify what it was about his purported mental disease that prevented him from asserting claims of error. Further, as the postconviction court noted, Crow's contention is belied by the fact that he did file three intelligible postconviction petitions in 2008, 2009, and 2013.
CONCLUSION
For the foregoing reasons, we affirm the postconviction court's summary denial of postconviction relief.
Affirmed.

A detailed discussion of the facts underlying Crow's conviction can be found in our decision on his direct appeal. See Crow , 730 N.W.2d at 274-77.

Crow's petition cites to Minn. Stat. § 690.185, which does not exist in Minnesota. Read in context, Crow likely meant to cite to Minn. Stat. § 609.185, which is the first-degree-murder statute.

The Legislature mandates that any petition for postconviction relief must be filed within 2 years after the entry of judgment of conviction or sentence if no direct appeal is filed, or an appellate court's disposition of a petitioner's direct appeal, whichever is later. Minn. Stat. § 590.01, subd. 4(a)(1)-(2). The 2-year time limit does not apply when, among other exceptions, the petitioner alleges that "a physical disability or mental disease precluded a timely assertion of the claim[.]" Id. , subd. 4(b). The district court did not rely on the statutory 2-year time bar in resolving Crow's postconviction claims. Further, because the State did not urge application of the statutory time bar, its application is not before us. Hooper v. State , 838 N.W.2d 775, 782 (Minn. 2013) (holding that the state waived application of the statutory time-bar on appeal when it failed to argue it).

The issue of whether good behavior in prison may be considered where resentencing is legally required for some other reason is not before us. Cf. Pepper v. United States , 562 U.S. 476, 490, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011). We do not decide it here.

Crow also cites to multiple California laws that affect the sentences of persons who committed crimes when under the age of 18. Cal. Penal Code §§ 3041, 3046, 3051, 4801 (West 2018). Crow also refers to a bill offered (but not enacted) in the Minnesota Legislature in 2018. The only bills offered in the 2018 legislative session related to mandatory sentences for young people, however, are limited in scope to persons who committed crimes when under the age of 18. See HF 3435, 90th Minn. Leg. 2018; HF 2218, 90th Minn. Leg. 2018. Of course, a bill not enacted into law cannot help Crow. Further, because these laws and bills are limited to juvenile offenders under age 18 at the time of the crime, they do not help Crow.

Crow makes this same argument as the basis for one of his claims of ineffective assistance of counsel. For the same reasons that we reject the jury-instruction argument here, Crow's ineffective assistance of counsel argument also fails.

Mahkuk was decided on August 9, 2007. 736 N.W.2d at 675. All three of Crow's prior postconviction petitions were brought after that date, yet Crow did not raise Mahkuk in any of his three prior postconviction petitions. Thus, any claim based on Mahkuk is also Knaffla -barred, and the postconviction court did not abuse its discretion by holding as much. See Davis , 880 N.W.2d at 377 ; see also Pearson , 891 N.W.2d at 597.

Crow relied on the same juror email in his third postconviction petition. The postconviction court denied Crow's claim based on the email on Knaffla grounds because the email was dated November 28, 2007, and Crow knew or should have known about the email when he filed his first postconviction petition in 2008. For the same reasons, Crow's current jury instruction claim, to the extent it relies on the email, is also Knaffla - barred.

Crow's sentence is not a departure under Minnesota statutes or sentencing guidelines. Indeed, Crow's sentence was plainly mandated by Minn. Stat. § 609.106, subd. 2(2).

Crow has been down this road before. Crow raised 12 ineffective assistance of counsel claims in his first postconviction petition. The postconviction court deciding the first petition rejected all 12 claims in explicit detail, concluding that even if Crow's lawyer were ineffective, there was no reasonable probability that the result of Crow's trial would have been different. The fourth postconviction court concluded that Crow's current "claims regarding ineffective assistance of counsel are repetitive of prior claims that have been raised, argued, and decided during Petitioner's direct appeal and first postconviction petition and are therefore barred from consideration upon a subsequent petition for postconviction relief." The postconviction court's conclusion is broadly correct and it did not abuse its discretion is denying the claims. Nonetheless, because we conclude that the specific grounds upon which the claim of ineffective assistance of counsel are based in the fourth postconviction petition differ sufficiently from those raised in the first postconviction petition, we address each ground individually.

Crow's only specific complaint about the investigator is that he did not ask the other individuals who were also charged in Berry's murder if they would testify at Crow's trial that Crow did nothing wrong. But Crow offers no proof that the other individuals would have agreed to testify or what they would have said. The only related evidence is a 2012 affidavit from J.P. that Crow submitted in connection with his third postconviction petition. In the affidavit, J.P. stated that Crow did not "actively participate" in the stabbing of Berry. To the extent that a valid ineffective assistance claim exists based on poor investigation, Crow knew or should have known about the claim at the very latest when he filed his third postconviction petition.

Under Minn. R. Crim. P. 20.01, subd. 3, "[i]f the prosecutor, defense counsel, or the court, at any time, doubts the defendant's competency, the prosecutor or defense counsel must make a motion challenging competency, or the court on its initiative must raise the issue."

Crow also included with his petition a few pages of mental health records from 2013 and 2016. The reports appear to diagnose Crow with major depressive disorder, antisocial personality disorder, and identified symptoms of posttraumatic stress disorder. But the reports do not indicate that Crow suffered from those conditions at the time of the trial in 2005. In addition, the reports note that Crow's "[r]esponse to medication appears to be good" and that his "[m]edication compliance appears to be good." Moreover, in generally analyzing Crow's mental state, one examining doctor noted that Crow appeared "alert and oriented," possessed "linear and goal directed" thought processes, and that Crow's insight and judgment "appear[ed] to be good." Another report stated that Crow "appeared alert, thought processes were organized and thought content was normal," that Crow's "speech was clear and was of normal rate, volume, and tone," and Crow's "[i]nsight and judgement (sic) were within normal limits." In short, these records from 2013 and 2016 do not form a sufficient basis to support Crow's claim that his counsel was ineffective in failing to assert that Crow was incompetent to stand trial in 2005. See Williams v. State , 869 N.W.2d 316, 319 (Minn. 2015).

Crow was arrested on September 30, 2004, in Billings, Montana, after fleeing Minnesota following the murder. He was indicted on January 14, 2005, and his trial commenced on August 9, 2005.

Crow also broadly asserts that Knaffla -bar exceptions apply to his claims of ineffective assistance of counsel. We have reviewed each claim and we conclude that neither the novel-legal-theory exception nor the interests-of-justice exception saves any of Crow's ineffective assistance of counsel claims. See Perry v. State , 731 N.W.2d 143, 147 (Minn. 2007).