*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1219**

Jermaine Edward Harris, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 3, 2024**
**Affirmed**
**Larson, Judge**

Hennepin County District Court
File No. 27-CR-13-33511

Tyler Bliss, Minneapolis, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney,
Minneapolis, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Reyes, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

In this appeal from an order denying his petition for postconviction relief, appellant

Jermaine Edward Harris argues the district court abused its discretion when it denied his

petition without an evidentiary hearing and determined that his claims did not satisfy any

exception to the two-year statutory time bar under Minn. Stat. § 590.01, subd. 4 (2022). We affirm.

## FACTS

This appeal stems from Harris's petition for postconviction relief, which largely relied on an affidavit from J.H. (affiant) recanting the testimony he gave at Harris's third trial for the murder of R.J. (victim). The following facts are derived from the evidence presented at Harris's third trial and Harris's submissions with his petition for postconviction relief.

### The Underlying Killing

On November 21, 2012, victim was shot and killed. The underlying trials involved four people relevant to this appeal: (1) Harris; (2) affiant, who was a close friend to Harris; (3) victim; and (4) D.D. (witness), who was a close friend to victim.

Prior to the killing, Harris became upset with victim because victim had sex with the mother of Harris's child. In July 2012, Harris and victim engaged in a physical altercation, which affiant and affiant's brother broke up. A second altercation soon followed between Harris, victim, and others, during which Harris was shot in the leg. Harris and victim supposedly settled their dispute in September 2012.

On the night of November 21, 2012, Harris, affiant, victim, and witness went together to get "wet sticks"—cigarettes laced with PCP. Victim and witness rode in a Chevrolet Impala; Harris and affiant rode in a Ford Explorer. After the men obtained the wet sticks, they eventually parked to smoke the wet sticks in an area Harris selected.

Victim and witness moved into the Explorer and sat in the back seat. Harris sat in the driver's seat, and affiant sat in the front passenger's seat.

After they smoked the wet sticks, witness and victim exited the Explorer and walked toward the Impala. Both men stopped to urinate. As witness walked back to the Impala from a nearby tree, witness saw Harris exit the Explorer with a gun in his hand and fire at least three shots. Witness took cover behind the Impala and heard victim cry out as he was shot. Witness then saw Harris get back into the Explorer and heard the Explorer drive away. As the Explorer left, witness found victim unconscious where he collapsed behind the Impala. Witness spoke to police on November 24, 2012, and identified Harris and affiant as being involved in the shooting. Witness testified at trial consistent with the facts given above.

*Procedural History*

Respondent State of Minnesota indicted Harris and tried him twice on charges of first- and second-degree intentional murder pursuant to Minn. Stat. §§ 609.185, 609.19. Harris's first two trials ended in hung juries, and the district court declared a mistrial in both instances. After the second trial, the district court dismissed the indictment but allowed the state to refile a criminal complaint to prosecute the case a third time. The state immediately filed a new complaint charging Harris with second-degree intentional murder.[1] At the third trial, the jury found Harris guilty of second-degree murder. The district court entered judgment of conviction and sentenced Harris to an executed 450-

---

[1] The state also charged Harris with prohibited person in possession of a firearm pursuant to Minn. Stat. § 624.713, subds. 1(2), 2(b) (2012), but later dismissed the charge.

3

month prison term. Harris appealed his conviction, and we affirmed the conviction in a nonprecedential opinion. *See State v. Harris*, No. A14-1039, 2015 WL 4714657, at \*1, \*7 (Minn. App. Aug. 10, 2015), *rev. denied* (Minn. Oct. 28, 2015). The Minnesota Supreme Court denied Harris's petition for discretionary review, Harris did not file a petition for certiorari with the United States Supreme Court, and the judgment became final on November 23, 2015.

*Affiant's Previous Statements*

When law enforcement first interviewed affiant in November 2012, he was reluctant to speak and denied being present when victim was killed. Eventually, affiant was subpoenaed to testify before a grand jury. Affiant testified that, after the four men smoked the wet sticks, affiant heard gunshots, and, when Harris got back into the Explorer, Harris said, "He shot me, I shot him." Affiant gave a similar account to law enforcement in a recorded statement after his grand-jury testimony. There, affiant said: Harris exited the Explorer and walked toward the Impala; affiant then heard several gunshots; and, when Harris returned to the Explorer, Harris said something like "I shot him because he shot me."

At Harris's first trial, inconsistent with his grand-jury testimony and recorded statement, affiant testified that he did not remember much, he did not hear any gunshots, and Harris never said, "He shot me, I shot him." Affiant claimed he fabricated the earlier statements. Affiant also testified that he lied to the grand jury because the prosecutors pressured him and threatened to arrest him if he did not agree with their version of events.

4

Between Harris's first two trials, the state charged affiant with aiding an offender under Minn. Stat. § 609.495, subd. 3 (2012), on the theory that affiant lied to the jury in the first trial. Despite being subpoenaed to testify at Harris's second trial, affiant refused to do so. Affiant was held in contempt of court and sentenced to 90 days in jail. Before the third trial, affiant entered a guilty plea to the aiding-an-offender charge, admitting that he lied to the police and under oath at the first trial. Affiant had not yet been sentenced at the time of Harris's third trial.

At Harris's third trial, affiant testified that he lied during Harris's first trial when he testified that Harris did not say, "He shot me, I shot him." Affiant also offered an account of the killing that was consistent with his grand-jury testimony and recorded statement. Affiant testified that he smoked PCP with Harris "numerous times," and that Harris acted "[k]ind of aggressive" under the influence of PCP. Affiant further testified that the state did not offer him a plea deal for his aiding-an-offender charge; instead, he pleaded guilty because he decided to tell the truth. Affiant expressed his understanding that he had no plea deal with the state and that the judge in his case would determine his sentence. He also acknowledged his understanding that the state would advise the judge regarding the state's view of an appropriate sentence based on affiant's conduct at Harris's third trial.

*Harris's Petition for Postconviction Relief*

On October 13, 2021, affiant signed an affidavit claiming he was asleep at the time victim was killed, he had not heard gunshots, Harris did not say anything to affiant about shooting anyone, and almost all of affiant's testimony at Harris's third trial was false. Affiant also claimed that he lied when he testified that the prosecutors did not give him a

5

plea deal, and that he lied when he testified that he "was not pleasing the prosecutors when [he] pled guilty and [he] just wanted to be held accountable for [his] actions."

Based largely on this affidavit, Harris filed a petition for postconviction relief. Harris argued that he was entitled to postconviction relief because the affidavit provided evidence that he was innocent. He also argued that his petition should be considered, even though it was filed more than two years after the judgment of conviction became final, because his petition satisfied the newly-discovered-evidence and interests-of-justice exceptions to the two-year statutory time bar. *See* Minn. Stat. § 590.01, subd. 4(b)(2), (5). The postconviction court denied Harris's petition in full, without an evidentiary hearing, on the grounds that Harris failed to show the affidavit met the requirements for the newly-discovered-evidence or interests-of-justice exceptions. Harris appeals.

**DECISION**

Harris argues the postconviction court erred when it summarily denied his petition for postconviction relief without holding an evidentiary hearing. We review a postconviction court's decision to summarily deny "a petition for postconviction relief for an abuse of discretion." *El-Shabazz v. State*, 984 N.W.2d 569, 573 (Minn. 2023). "A [postconviction] court abuses its discretion when it has 'exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings.'" *Id.* (quoting *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017)). "We review [a postconviction] court's legal conclusions de novo and its factual findings for clear error." *Id.*

"A postconviction court need not grant a hearing on a claim if the files and records of the proceeding conclusively establish that the petitioner is not entitled to relief." *Colbert v. State*, 870 N.W.2d 616, 622 (Minn. 2015) (citing Minn. Stat. § 590.04, subd. 1 (2014)). "Accordingly, a postconviction court may summarily deny a claim that is untimely under the postconviction statute of limitations, Minn. Stat. § 590.01, subd. 4(a) [(2022)] . . . ." *Id.* A petitioner must file a petition for postconviction relief within two years after "an appellate court's disposition of petitioner's direct appeal" unless any of the five statutory exceptions apply. Minn. Stat. § 590.01, subd. 4(a)-(b) (2022).

Harris did not file his petition for postconviction relief within two years of the judgment of conviction becoming final. However, he argues the postconviction court should have granted him an evidentiary hearing because his postconviction petition satisfied the newly-discovered-evidence[2] and interests-of-justice exceptions to the statutory time bar. *See id.*, subd. 4(b)(2), (5). We address each argument below.

## I.

Harris first argues the postconviction court abused its discretion when it determined Harris is not entitled to relief under the newly-discovered-evidence exception to the statutory time bar. We are not persuaded.

---

[2] Harris argues he has satisfied the newly-discovered-evidence exception to the procedural bar established in *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976). We note that there is no newly-discovered-evidence exception to the *Knaffla* procedural bar. *See, e.g.*, *Crow v. State*, 923 N.W.2d 2, 9-10 (Minn. 2019) (explaining that there are two exceptions the *Knaffla* procedural bar: the novel-legal-issue exception and the interests-of-justice exception). But we discern, based on the substance of the argument, that Harris intended to argue that he satisfied the newly-discovered-evidence exception to the statutory time bar, and we will treat the argument as such.

The newly-discovered-evidence exception requires a petitioner to demonstrate that the evidence:

> (1) is newly discovered; (2) could not have been ascertained by the exercise of due diligence by the petitioner or the petitioner's attorney within the 2-year time-bar for filing a petition; (3) is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) establishes by the clear and convincing standard that petitioner is innocent of the offenses for which he was convicted.

*El-Shabazz*, 984 N.W.2d at 574 (quoting *Riley v. State*, 819 N.W.2d 162, 168 (Minn. 2012)). "All five requirements must be met for the newly discovered evidence exception to apply." *Id.* We conclude the affidavit fails to satisfy the fourth and fifth prongs of the newly-discovered-evidence exception.

Beginning with affiant's claims that he was asleep at the time of the killing, he did not hear gunshots, and Harris did not say anything to affiant about shooting anyone, we conclude these statements fail to satisfy the fifth prong.[3] To satisfy the fifth prong, Harris must do more than introduce uncertainty about his guilt. *See Henderson v. State*, 906 N.W.2d 501, 506 (Minn. 2018). Instead, Harris must "allege the existence of evidence, which, if true, would establish [his] innocence by clear and convincing evidence." *Id.* (emphasis omitted) (quoting *Miles v. State*, 800 N.W.2d 778, 784 (Minn. 2011)). An evidentiary hearing is not required when the facts alleged in the petition, taken as true, "are

---

[3] Harris asserts the claims in the affidavit "would probably produce a more favorable result on retrial as [they] did in the prior *two* trials." But Harris misstates the relevant standard. To satisfy the newly-discovered-evidence exception to the two-year statutory time bar, Harris must establish by clear and convincing evidence that he is *innocent*, not that he might have obtained a more favorable result. *See El-Shabazz*, 984 N.W.2d at 574.

legally insufficient to show [petitioner's] innocence by a clear and convincing standard." *Id.* at 507.

In *Henderson*, the supreme court affirmed the summary dismissal of a postconviction petition based on affidavits that failed to exculpate appellant. *See id.* There, the evidence presented in the affidavits did not contradict evidence of guilt presented at trial. *Id.* at 507-08. Because "other evidence of [petitioner]'s guilt remain[ed] regardless of whether the affidavits [were] true," the supreme court determined the facts alleged in the affidavits did not clearly and convincingly show that petitioner was innocent. *Id.* And because the facts were legally insufficient to show innocence, petitioner had not satisfied the newly-discovered-evidence exception, rendering his petition untimely. *Id.* at 508.

This case is similar to *Henderson*. Even if true, affiant's statements are not inconsistent with guilt. In the affidavit, affiant neither claims someone else killed victim, nor offers any positive evidence that Harris did not kill victim. The sum and substance of affiant's statement is that affiant did not observe Harris kill victim. Further, affiant's claims do not contradict witness's testimony that witness observed Harris kill victim. In light of witness's detailed and consistent description of the night victim was killed, and more importantly, the affidavit's failure to contradict witness's account, we conclude the affidavit fails to clearly and convincingly establish that Harris is innocent.

Addressing affiant's claims that the state engaged in previously undisclosed coercive conduct toward affiant, we conclude these claims fail to satisfy prongs four and

five.[4]  Prong four requires that the petitioner proffer evidence that "is not for impeachment purposes."  *El-Shabazz*, 984 N.W.2d at 574; *see also* Minn. Stat. § 590.01, subd. 4(b)(2) (stating that "newly discovered evidence" cannot be "for impeachment purposes").  Impeachment evidence is "[e]vidence used to undermine a witness's credibility."  *Black's Law Dictionary* 700 (11th ed. 2019).  Affiant's statements regarding the state's allegedly coercive conduct are plainly impeachment evidence; their sole purpose is to undermine the credibility of affiant's testimony at Harris's third trial.  Further, as with the statements recanting his prior testimony, affiant's statements regarding the state's allegedly coercive conduct—even taken as true—are not inconsistent with guilt and therefore do not satisfy prong five.  The state's alleged conduct in no way negates witness's consistent testimony that he observed Harris kill victim.  Thus, affiant's statements regarding the state's conduct do not establish clearly and convincingly that Harris is innocent.

For these reasons, we conclude the postconviction court did not abuse its discretion when it determined the files and records in this case conclusively established that Harris is not entitled to relief because he failed to satisfy the newly-discovered-evidence exception to the statutory time bar.

---

[4] According to Harris, the postconviction court improperly focused on affiant's recantation of his testimony from the third trial and failed to consider the allegations surrounding the state's coercive conduct.  Harris claims that the state's conduct "was not known and could not have been discovered" by Harris because only affiant and the state held that information.  But the record plainly shows that the postconviction court did, in fact, analyze affiant's statements in the affidavit about the "'plea deal' and the purported threats from the State."

**II.**

Harris also contends the postconviction court abused its discretion when it determined the files and records in this case conclusively established that Harris is not entitled to relief because he failed to satisfy the interests-of-justice exception to the statutory time bar. We are, again, unpersuaded.

The interests-of-justice exception requires that "the petitioner establish[] to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). "The interests of justice exception to the two-year time bar is intended for injustices related to delays in *filing* a petition, not an injustice related to the *merits* of the petition." *Andersen v. State*, 982 N.W.2d 448, 456 (Minn. 2022). "The interests-of-justice exception is available only in rare and exceptional situations." *Hooper v. State*, 888 N.W.2d 138, 142 (Minn. 2016).

We cannot say that the postconviction court abused its discretion when it determined Harris failed to meet the high bar the interests-of-justice exception demands. The record shows that Harris knew the state would push for a harsher sentence in affiant's aiding-an-offender case if affiant did not testify favorably during Harris's third trial. Harris was aware that affiant changed his story multiple times throughout the investigation and Harris's prosecution. And Harris knew affiant gave testimony at Harris's first trial that was consistent with the statements made in affiant's affidavit. Thus, assuming that the claims in the affidavit are true, Harris would have been aware of those claims at the time of his third trial and could have brought his petition for postconviction relief in a timely manner. Harris has failed to demonstrate that an injustice prevented him from doing so.

11

For these reasons, the postconviction court did not abuse its discretion when it determined the files and records in this case conclusively established that Harris is not entitled to relief because he failed to satisfy the interests-of-justice exception to the statutory time bar.  We therefore conclude the postconviction court did not abuse its discretion when it summarily denied Harris's petition for postconviction relief.

**Affirmed.**